L. Knabb, otherwise known as Lucius Knabb, v.
Reconstruction Finance Corporation

197 So. 707
Special Division B
Opinion Filed July 30, 1940
Rehearing Denied September 17, 1940

*H. L. Anderson,* for Plaintiff in Error.

*Stockton, Ulmer & Murchison* and *Hutchinson I. Cone, Jr.,* for Defendant in Error.

BUFORD, J.—To a judgment on promissory notes defendant took writ of error and the case is before us for review.

After consideration of the record and briefs in the light of oral argument at the bar of the Court, we are of the opinion that the material questions for our determination, four in number, are properly stated by the defendant in error and that these questions cover the points sought to be presented by plaintiff in error in seven questions.

The four questions are:

1. "When a final judgment by default is entered against a defendant for failure to plead, and defendant moves to vacate the default and, in support of such motion, tenders a plea upon which he offers to go to trial immediately, and the trial court vacates the default on the condition that defendant go to trial on such plea as soon as a trial date can be had, and the trial is finally held six months after the default was vacated—under such circumstances is the trial court justified, in the exercise of its discretion, in

refusing to permit defendant to file additional pleas at the trial, *after plaintiff's case in chief has been closed, and after defendant has started putting on his own testimony?"*

2. "On the trial of a suit brought by a transferee on a promissory note against the maker, where the endorsement is not denied, and plaintiff produces the note, together with evidence (which is not denied) that the note was transferred to plaintiff by the payee as collateral security, and that plaintiff holds possession of the note as such pledgee (there being no claim made by plaintiff that it is a holder in due course), is not plaintiff entitled to maintain the action without proof of actual endorsement of the note?"

3. "In an action on a promissory note, when plaintiff in its case in chief introduces in evidence a complete written contract by the terms of which the note was described and delivered, is not the defendant precluded, under the parole evidence rule, from attempting to prove, by conversations and letters prior in time to the written contract, that the subject matter of the agreement was different from that stated in the written contract?"

4. "In a suit on a promissory note, when there is no dispute as to the amount due, and the interest is merely a matter of mathematical computation and the plaintiff and defendant stipulate as to the amount of attorney's fees, is it not proper for the trial court to direct the jury with reference to the amount of the verdict?"

Plaintiff below, Reconstruction Finance Corporation, instituted the suit to recover on three promissory notes executed by defendant Knabb. One of the notes was then past due and maturity of the other two was accelerated in accordance with the terms of the notes. Suit was instituted on October 31, 1938. Knabb was served with process returnable to the December Rule Day, on which day declara-

tion was filed by the plaintiff. On the same day Knabb filed his appearance. He failed to plead. On the January, 1939, Rule Day default was entered against Knabb. On the 17th day of January, 1939, final judgment was entered by the court pursuant to default.

On January 23, 1939, defendant filed his motion to set aside and vacate the default and final judgment. On the same day the court entered its order as follows:

"This cause coming on to be heard this day on motion of the defendant to vacate and set aside the default and final judgment heretofore entered against him in this cause, and having tendered to the Court a plea and motion setting forth his reason why said plea was not filed in due course, and having further offered to go to trial upon said plea immediately or as soon as the Court can hear the trial of said cause, and it appearing to the court that said default and judgment should be set aside, although the court has not passed upon the legal sufficiency of the plea presented, and the Court being advised in the premises, it is therefore, ordered that said motion be and the same is hereby granted and said default and final judgment entered against said defendant be and the same is hereby vacated and set aside.

"It is further ordered that the plaintiff be and it hereby is authorized and permitted to withdraw from the files the original promissory notes sued upon and filed at the entry of the final judgment herein.

"DONE AND ORDERED in Chambers at Jacksonville, Duval County, Florida, this 23rd day of January, 1939."

The plea tendered and allowed to be filed was:

"That the sole and only consideration for the making and delivery of each of the three promissory notes, which defendant is sued for, wholly failed before this action was begun, in this:

"On or about the 15th day of July, 1936, the plaintiff made and entered into a verbal contract and agreement with the defendant to sell to the defendant a certain tract of land situated in Baker County, Florida, known as the Chicago Trust Company's land, for Fifteen Thousand Dollars, said purchase money to be paid by the defendant as follows: Three Thousand Dollars cash, and the balance to be evidenced by four promissory notes to be made by the defendant and delivered to the plaintiff, and each of said four promissory notes to be in the principal sum of Three Thousand Dollars each, carrying interest at the rate of five per cent per annum after maturity until paid, the interest to be paid annually on all four promissory notes; the first of said promissory notes was to become due and payable one year from and after July 15, 1936; the second of said promissory notes to become due and payable by its terms, July 15th, 1938; the third of said promissory notes to become due by its terms July 15th, 1939, and the last of said four promissory notes to become due and payable on the 15th day of July, 1940.

"Defendant further says that the plaintiff at various times before July, 1936, represented to the defendant that the plaintiff then held title to said lands by conveyance from Central Republic Bank & Trust Company, and that the plaintiff owned and was in position to sell and convey said lands to the defendant, and would sell said lands to the defendant for the sum of Fifteen Thousand Dollars upon the terms herein set forth, and would convey the said lands to the defendant freed of all liens excepting certain unpaid taxes, by a good and sufficient deed of conveyance to be delivered to defendant when the balance of the purchase money had been paid by the defendant to the plaintiff.

"Defendant further avers it to be true that as a part of the oral contract so made and agreed upon by the plaintiff,

and the defendant, for the sale by the plaintiff to the defendant, the plaintiff agreed and promised defendant that it would make and deliver to the defendant, a good and sufficient executory contract in writing, which would set forth the sale of said lands by the plaintiff to the defendant, and the purchase of the same by the defendant at the price and upon the conditions herein set out, and would within a reasonable time after the 15th day of July, 1936, deliver said executory contract in writing to the defendant. The defendant further says that afterwards, the plaintiff caused to be prepared certain documents and transmitted said documents to the defendant, but the defendant says that the written instrument so prepared and sent to the defendant by the plaintiff did not set out the true contract between the plaintiff and the defendant for the sale and purchase of said tract of land, but purported on the face thereof, a contract on the part of the plaintiff to sell to the defendant, one or more worthless promissory notes made by the Central Republic Bank & Trust Company, a banking corporation, formerly doing business in the City of Chicago, Illinois, and then held by the plaintiff as collateral for certain indebtedness which the plaintiff claimed against said Central Bank & Trust Company, and did not contain a promise of the plaintiff to convey said lands to the defendant and when the defendant discovered that the plaintiff had not kept its promise to deliver to the defendant a valid contract in writing whereby the plaintiff bound itself to convey to the defendant title to the lands aforesaid, the defendant protested and made demand upon the plaintiff that it perform its contract and deliver a good and sufficient contract in writing which would bind the plaintiff to convey title to the said lands to the defendant when defendant had completed payment of the said purchase money, with interest; that when the defendant discovered that the plaintiff had failed

and omitted to make and deliver to the defendant a valid contract to convey to the defendant the title to the lands aforesaid, the defendant had already paid to the plaintiff Three Thousand Dollars in cash on or about July 15th, 1936, and had paid the first of said series of promissory notes which matured July 15th, 1937, together with interest upon the whole balance of said purchase money, but the defendant refused to pay the second of said promissory notes, which matured July 15th, 1938, because of the failure of the plaintiff to perform its said oral agreement so made about July 15th, 1936, to convey said lands to the defendant, and to deliver a valid written contract which would evidence said oral agreement, and so informed the plaintiff and at the same time advised the plaintiff that the defendant would pay each of the promissory notes being the same three notes sued on in this action remaining unpaid as they matured when the plaintiff had delivered said executory contract to the defendant. About July or August, 1938, the defendant learned that the Central Republic Bank & Trust Company, which claimed that it owned the said lands, and its then Receiver, although said Bank & Trust Company and its Receiver well knew of the existence of the contract made by the plaintiff to convey said lands to the defendant, did, on the 10th day of March, 1938, sell and convey title to all said lands to one Duner, who now claims to be a purchaser thereof for value and without notice of the defendant's contract to purchase said lands so made with the plaintiff on or about the 15th day of July, 1936, and the plaintiff before the commencement of this action repudiated its contract to convey the title to said lands to the defendant, and claimed that it could not perform said contract because it did not have title to the lands."

The case was set for trial on March 27, 1939. Trial

was postponed until June 12, 1939, and again on application of defendant was postponed until July 3, 1939. During the progress of the trial defendant proffered seven (7) additional pleas. The motion to be allowed to file the pleas was denied.

There was a proffer by the defendant to produce certain evidence outlined in five paragraphs. The plaintiff objected to the introduction of such evidence and the objection was sustained. The proffered evidence was not responsive to the plea.

In regard to question number one (1) we think there was no abuse of the judicial discretion in denying defendant the privilege of filing the proposed additional pleas because the condition upon which the default and final judgment were set aside included the provision that the defendant had offered to go to trial upon the plea then tendered immediately or as soon thereafter as the court could hear the trial of the cause, and the record shows that the additional pleas were not tendered until the case had been set a third time for trial and when the parties had prepared for trial on the issues as presented by the declaration and plea and were then ready to proceed with the trial. It appears that the allowance of the filing of additional pleas would have required a continuance of the cause and a preparation for the trial of entirely different issues than those then presented. Permitting amendments or additional pleadings during the trial is a matter within the sound judicial discretion of the trial court. See Neal v. Spooner, 20 Fla. 38; Livingston v. Anderson, 30 Fla. 117, 11 Sou. 270; Hartford Fire Insurance Co. v. Brown, 60 Fla. 83, 53 Sou. 838.

The record fails to disclose an abuse of discretion by the trial court in this regard.

This is true not only for the reasons above stated, but because the record does not show that the refusal to allow the filing of these pleas resulted in harm to the defendant in that the evidence which the defendant proffered to introduce was not sufficient to constitute a defense to the action.

It is well settled that in the exercise of the court's discretion to open a default or vacate a default and final judgment, the court may fix terms and conditions upon which the order is to be effective and parties must abide by such conditions. See 34 C. J. 380, Waterson v. Seat, 10 Fla. 336.

In Hartford Fire Insurance Co. v. Brown, *supra,* this Court said:

"The amendment of pleadings during the trial of a case is a matter resting within the sound judicial discretion of the trial judge and an appellate court will not interfere with the exercise of such discretion whether in granting or refusal of same, unless a plain abuse of such discretion is shown."

The proffered pleas and the proffered testimony show that all the facts sought to be pleaded were within the knowledge of the defendant and his counsel at the time the default and final judgment were vacated and at the time the original plea was filed. Therefore, the trial court was justified in denying defendant leave to file the plea. See 49 C. J. 535 and 580.

As to the second (2) question: The declaration in this case alleged endorsement and delivery of the note sued on. The endorsement and delivery to Reconstruction Finance Corporation of the notes was not denied by the plea. Therefore, such allegations were admitted.

Rule 26 of the Common Law Rules is:

"Pleas—In Actions on Notes, etc.—In all actions upon

bills of exchange and promissory notes, the plea of non assumpsit and 'never was indebted' shall be inadmissible. In such actions, therefore, a plea in denial must traverse some matter of fact. *Exempli Gratia:* The drawing, or making, or indorsing, or accepting, or presenting, or notice of dishonor of the bill or note."

In Nelson v. Hall, 73 Fla. 810, 74 Sou. 877, it was said: "According to a well established rule of pleading, allegations or averments that are material to the cause of action or defense which are not denied by the opposite party, are for the purpose of the trial considered to be not in issue. The reason for the rule is that the parties may by their pleadings produce a single issue which is the object of the common law system of pleading. If an immaterial issue is tendered it may be accepted and the parties go to trial upon it. See Cotton States Belting & Supply Co. v. Florida R. Co., 69 Fla. 52, 67 South. Rep. 568; New York Life Ins. Co. v. Mills, 51 Fla. 256, 41 South. Rep. 603; Evans v. Kloeppel, decided at the June Term, 1916, 73 South. Rep. 180."

Our statute, Sec. 6818 C. G. L., expressly provides that the holder of a note is *prima facie* deemed to be a holder in due course.

In Vinson v. Palmer, 45 Fla. 630, 34 Sou. 276, it was said:

"Under the second, third, sixth and seventh assignments of error it is contended that no endorsement of the notes being alleged in the declaration, nor shown to have been made before suit, no recovery thereon could be had by the bank to which they were assigned or its receiver. Section 981 of the Revised Statutes authorizes suit by the real party in interest, whether the notes were endorsed or assigned without endorsement. Jordan v. John Ryan Co.,

35 Fla. 259, 17 South. Rep. 73; Withers v. Sandlin, 36 Fla. 619, text 628, 18 South. Rep. 856; Little v. Gradley, 43 Fla. 401, 31 South. Rep. 342.

"III. Under the fifth assignment of error it is urged that the court erred in permitting the endorsement of the notes in question by the payee pending trial. It does not appear except from the assignment of error that the ruling complained of was made, though the fact of such endorsement being made is testified to by Safford. But assuming the fact to appear, and to be error, it was not prejudicial to the defendant. As we have seen, the suit was maintainable without the endorsement, and permitting it to be made affected the rights of neither party."

In Dunham v. Meyer, 114 Fla. 594, 154 Sou. 702, it was said:

"The defendant's plea confessed (but undertook to avoid the confession of) the allegation of the plaintiff's declaration to the effect that the notes had been actually, if not legally, acquired for value by the plaintiff at an administrator's sale which took place prior to the maturity thereof. The actual execution of the notes by defendant was established by defendant's testimony at the trial. And plaintiff, as competent evidence of his ownership of, and right to sue on said notes as a holder of same for value before maturity, thereupon produced and filed the notes themselves in evidence.

"In consequence of such showing plaintiff was, under the statute (Section 6818 C. G. L., 4732 R. G. S.) presumed to be a holder in due course as against Meyer, the maker of the notes, since Meyer was admittedly bound on them prior to the administrtor's sale and prior to the assignment of title and prior to delivery of possession of said notes to the plaintiff.

"In Jones v. Central Hanover Bank & Trust Co., 110 Fla. 69, 147 Sou. Rep. 895, it was held that in a suit at law brought by an actual holder suing as an endorsee of a negotiable instrument *against the maker thereof,* it is enough that the plaintiff's title appear to be good as against the defendant maker, because of the rule that the title or interest of an actual holder of a negotiable instrument cannot be disputed or inquired into unless necessary for the purpose of a legitimate defense against the payee or some prior holder that would not otherwise be available as against the plaintiff." See also Central Hanover Bank & Trust Co., 110 Fla. 69, 147 Sou. 895.

The notes constituting the cause of action here were dated July 15, 1936, and were of the following tenor and effect.

"TIME NOTE

No._____R. F. C. No. 78 $3000.00

Due_____ Chicago, Ill., July 15, 1936

"THREE YEARS after date, for value received, the undersigned promises to pay to the order of William L. O'Connell, Receiver of Central Republic Trust Company (herein referred to as Payee), at its office in Chicago, Three Thousand and no/100_____Dollars, with interest at the rate of five per cent (5%) per annum from date until paid, payable annually.

"The undersigned hereby transfers, pledges and delivers to the Payee as collateral security for the payment of this note and all other liabilities of the undersigned to the Payee, whether direct or contingent, due or hereafter owing, whether now or hereafter contracted or existing (including all liabilities of any partnership incurred while the undersigned may have been or be a member thereof), the following property:

"Note of Central Republic Bank & Trust Company, as Trustee under will of Walter E. Flanders for balance of $71,134.20 dated December 7, 1931, due on demand;

"Note of Central Republic Bank & Trust Company, as Trustee under the will of Walter E. Flanders for $19,330.61, dated January 14, 1932, due on demand;

"The payee is also given a lien for the payment of this note and of all said other liabilities upon all of the property and securities now or hereafter left by the undersigned in its possession including property and securities in any Safekeeping or Agency Account (whether in substitution for the above described or otherwise) and all the provisions of this instrument referred to collateral shall extend and apply to such other, substituted or additional property. For the additional security and protection of the Payee, it is agreed that the Payee shall have the right at its election at any time or times hereafter prior to the payment in full of all liabilities of the undersigned to the Payee to transfer and/or register any or all of the property and/or securities hereby pledged into the name of the Payee, or at its election into the name of its nominee or nominees. The Payee may at any time call for additional security satisfactory to it, and if the same be not furnished on demand or if the Payee shall feel insecure, or if the liabilities of the undersigned to the Payee shall be increased, or upon any adjudication of the insolvency or bankruptcy of or any general assignment by the undersigned or appointment of a receiver for the undersigned, then the Payee, in any of such cases, without demand or notice to the undersigned, may at its election declare this note and any or all of said other liabilities immediately due and payable. At any time, either before or after the maturity of this note (whether by its terms or by election as aforesaid), the Payee may, from

124

time to time, in its discretion, without demanding payment or additional security, sell, assign and deliver said collateral or any part thereof free of any right of the undersigned to redeem the same, at public or private sale, without advertising said sale and without notice to the undersigned, and at such sale the Payee may become the purchaser of said collateral or any part thereof; and after deducting all legal or other costs and expenses, including reasonable attorney's fees, from the proceeds of such sale or sales the Payee may apply the remainder to the payment hereof and of any or all of said liabilities whether due or not, in its discretion, returning the overplus, if any, to the undersigned. The Payee may at any time apply any moneys, balances, credits, or collections, which it may hold on deposit or otherwise for the undersigned, toward the payment hereof and of all said liabilities, whether due or not. The Payee may, in its discretion, compromise, renew or extend any of said collateral, or exchange the same for property in its judgment of equal value, or collect, and at the expense (and in the name of the undersigned or otherwise), by suit, or otherwise, enforce the payment of any of said collateral, and at its election apply the proceeds thereof to the payment hereof and of any of said other liabilities whether due or not; but the Payee shall have no obligation to collect any of said collateral or to hold any maker or endorser thereof. The undersigned will bear all reasonable expense and all loss occasioned by or connected with the collection, enforcement, or transmission of securities pledged hereunder, or instruments or documents delivered herewith, or the remittance of proceeds of any of the foregoing, including, among other things, loss arising from negligence, insolvency or default of any agent or instrumentality utilized by the Payee or sus-

tained in any exchange transaction, all collections, enforcement proceedings, transmission of property, and papers, and remittance of funds being solely at the cost and risk of the undersigned. Every right, power and discretion herein granted to the Payee shall extend and apply to and be for the benefit of any transferee, assignee or legal holder hereof; and the Payee may deliver said collateral or any part thereof to any transferee or assignee, and the Payee shall thereafter be discharged from risk of loss thereof and from any responsibility whatsoever in the matter. And to secure the payment hereof the undersigned and each of them does hereby authorize irrevocably any attorney of any court of record to appear for the undersigned or any of them in such court, during term time or vacation, at any time hereafter, and to confess judgment without process against such undersigned in favor of the holder of this note for such amount as may appear to be unpaid thereon, together with interest, costs and reasonable attorney's fees, and to waive and release all errors which may intervene in any such proceedings and consent to immediate execution upon said judgment, hereby ratifying and confirming all the said attorney may do by virtue hereof. If this note be signed by more than one person, every obligation and authorization of the undersigned shall be joint and several, and every reference to the undersigned shall be construed to mean any of them as well as all of them."

The notes were signed by the defendant Knabb. Originally there were four notes, one due one, two, three and four years after date. The first note was paid at maturity. · The record shows that on July 2, 1936, W. C. Fordyce, acting for and on behalf of Reconstruction Finance Corporation, wrote Mr. Knabb as follows:

126

"Mr. L. Knabb,
"Moniac, Georgia.

> "*Re:* Central Republic Trust Company
> "*Chicago, Illinois* (*Closed*)
> "Flanders Trust

"Dear Mr. Knabb:

"Referring to our correspondence relative to the lands in Baker County, Florida, owned by the Flander's Trust,. let me say that this Agency now has authority to accept, with certain qualifications, your proposition to purchase the notes of the Flander's Trust held by the Corporation.

"There are two of these notes for $71,134.20 and $19,330.61, respectively.

"The Corporation will sell these two notes to you, without recourse, representation or warranty on the part of this corporation, or the Central Republic Trust Company, or its Receiver, for a total consideration of $15,000.00. The terms of the sale are to provide for a down payment of $3,000.00 and four notes of $3,000.00 each, maturing one, two, three and four years from date of sale, with interest at the rate of 5%, payable annually.

"It is important for the Corporation to know your ability to meet these notes as they mature. It will, therefore, be necessary for you to send us your financial statement, showing your assets and liabilities, in the form usually used by banks. This statement should be signed by you and acknowledged before a Notary. If you do not care to furnish this statement, or if it is not satisfactory to this Agency, we shall be obliged to ask that you furnish to the Corporation collateral sufficient in amount to insure the payment of the four notes, in the aggregate amount of $12,000.00.

"If you are still willing to purchase the notes in accord-

ance with these terms and conditions, please advise us and contract and notes will be sent for your signature."

In reply to that letter Mr. Knabb wrote Reconstruction Finance Corporation on July 7th, as follows:

"MONIAC, GA., July 7th, 1936.

"Central Republic Trust Co.,
Flander's Trust.

"Reconstruction Finance Corp. (Land Office)
"Chicago, Ill.
"Gentlemen:

"Your letter of the 2nd to hand and note what you say in regards to the Baker County lands and Flander's note. I have prepared my financial statement and am enclosing it to you and will give you cashier check for Three Thousand ($3,000.00) dollars as soon as you notify me every thing concerning the trade and my ability to pay future notes is satisfactory to you and the Reconstruction Finance Corp. If this is all clear you can proceed to draw necessary papers and I will execute them with you any time."

On July 15 Reconstruction Finance Corporation, through its agent, Mr. Fordyce, transmitted the notes to Mr. Knabb for execution with letter as follows:

"Mr. L. Knabb,
"Moniac, Georgia.

"*Re:* Central Republic Trust Company
"Chicago, Illinois — (Closed)
"Flander's Trust.

"Dear Mr. Knabb:

"We have for acknowledgment and thanks your letter of July 7, 1936, enclosing copy of your financial statement.

"We understand our agreement to be that you purchase

the two notes of the Central Republic Bank & Trust Company as Trustee under the will of Walter E. Flanders that are now pledged to this Corporation. One of these notes is dated December 7, 1931, due on demand, with interest at 7% for the sum of $71,134.20. The other note is the note of the Central Republic Bank & Trust Company as Trustee under the will of Walter E. Flanders, dated January 14, 1932, due on demand, with interest at 7%, for the sum of $19,330.61.

"The Reconstruction Finance Corporation will endorse each note without recourse, warrant or representation and sells them to you for $15,000.00, payable $3,000.00 in cash at this time and four (4) notes for $3,000.00 each, all dated July 15, 1936, and payable one, two, three and four years after date, respectively, with interest at 5% annually.

"As collateral for your four notes in the aggregate amount of $12,000.00 this Corporation will hold the two notes above described of the Central Republic Bank & Trust Company as Trustee under the will of Walter E. Flanders.

"We are enclosing for your signature the four (4) notes for $3,000.00 each, all dated July 15, 1936, and payable one, two, three and four years after date respectively. Please sign these notes and return them to this Agency for the attention of W. C. Fordyce, with check for $3,000.00 payable in either New York or Chicago funds at par."

On July 21, Mr. Knabb, having executed the notes, returned them to Reconstruction Finance Corporation with a letter as follows:

"MONIAC, GA.

"CENTRAL REPUBLIC TRUST Co. July 21st, 1936

"*Flanders Trust*

 "Reconstruction Finance Corp.

 "RECEIVED July 24 1936 REGISTERED

"Reconstruction Finance Corp.,
"164 West Jackson Boulevard,
'Chicago, Ill.
"Gentlemen:

"Your letter of the 15th to hand and note you will sell me the two notes of Walter E. Flanders to The Central Republic Bank and trust co. that was pledged to your company the Reconstruction Finance Corp. for $71,154.20 and $19,330.61 bearing interest at 7% from date for $15,000.00 three thousand cash and $3,000.00 each year for Four years dated july 15th, 1936, at 5% interest from date. This I accept and am sending you check for $3,000.00 to pay the first payment and will pay you on or before July 15th, 1937, on July 15th, 1938, July 15th 1939, July 15th 1940 interest payable once a year on all notes.

"I am buying these notes without recourse but as the deed to this property is in the old trust company name I think your company or the old defunct trust company receiver should make a quit claim title which would not bind them in any way except it would show you dont claim this land any longer than I could go in court and sue out me a deed and get me where I would have something for my money or as it is I dont get anything. Please discuss this with your lawyer and I think he will advise this or something similar. If you hold the two old notes and dont give me anything I cant do anything towards clearing up the title until four years runs out and I have paid all the $15,000.00 which I dont think the land should stand in this shape. I think it should be cleared up and run through the courts for my protection and your company. Let me her from you along this line."

These letters, with the notes, constituted the written contract between the parties.

The record shows that there had been some negotiations prior to this correspondence from all of which the necessary conclusion is that Reconstruction Finance Corporation held as collateral the ninety-odd thousand dollars in notes referred to in letters above quoted and that Mr. Knabb at that time was in some controversy with the owners of certain lands in Baker County, Florida, and that he desired to acquire the notes executed by the owners of these lands. That the Reconstruction Finance Corporation realized that the notes were not of great value, being worth nothing like the face thereof. They were probably worth more to Knabb, if properly handled, than to anyone else.

There is no proof, or proffer of proof, in the record that Reconstruction Finance Corporation held any right, title or interest in the lands in Baker County, Florida. Knabb agreed to pay $15,000.00 for the ninety-odd thousand dollars in notes of the land owner, $3,000 to be paid in cash and balance in four equal payments of $3,000 each, as stated, *supra;* Reconstruction Finance Corporation to hold the notes of Central Republic Bank & Trust Company as Trustee as collateral to secure the payment of the Knabb notes and to deliver these notes to Knabb when the $15,000, sale price thereof, was fully paid by Knabb.

It is well settled that parol or extrinsic testimony cannot be received to change, add to or subtract from the terms of a valid written contract. Here the agreement for the purchase of the notes, as shown by the letters exchanged between the parties, is full and complete, clear and unambiguous. The rule stated in Peplax Medicine Company v. Tampa Drug Company, 88 Fla. 473, 102 Sou. 632, is applicable and is as follows:

"The books tell us that the parol evidence rule is in no sense a rule of evidence, but it is a rule of substantive law.

Prof. Thayer in speaking on the subject says that 'few things are darker or fuller of subtle difficulties.' It is not a single rule or rule for things parol only. It does not embrace all the rules that concern either parol or writing, nor does it carry the assumption that a writing can possess independently of the surrounding circumstances any inherent status or efficacy. 5 Wigmore on Evidence, par. 2400.

"Withal this confusion and difficulty we think no rule of substantive law is better settled than that which declares that extrinsic or parol evidence is inadmissible to contradict, subtract from, add to or vary a valid written instrument. 10 R. C. L., par. 208, 1016 and cases cited; Perry v. Woodberry, 26 Fla. 84, 7 South. Rep. 483; Milton v. Burton, 79 Fla. 266, 84 South. Rep. 147; Inner Shoe Tire Co. v. Treadway, 286 Fed. 838."

In 17 C. J. 8321, the text is:

"Nature and object of agreement and situation of parties. —In arriving at the intention of the parties, where the language of a contract is susceptible of more than one construction it should be construed in the light of the circumstances surrounding them at the time it is made, it being the duty of the court to place itself as nearly as may be in the situation of the parties at the time so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and the correct application of the language of the contract. For this purpose in construing a contract the court will consider the nature of the agreement itself, together with all the facts and circumstances leading up to and attending its execution, the relation and condition of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. This rule does not apply, however, where the language of the

contract leaves no doubt as to the meaning of the parties and in such a case the contract is to be construed without regard to extraneous facts. Facts of public notoriety relating to the subject of a contract must be presumed to have been known to the parties at the time of making the contract, and the language used must be construed in reference to such facts."

In 10 R. C. L. 1044 it is said:

"Contractual statement.—The rule permitting the true consideration of written contracts to be inquired into by parol evidence does not apply where the statement in the contract as to the consideration is more than a mere receipt or acknowledgment of payment, and is of a contractual nature. If the consideration is expressed merely as a recital of a precedent or contemporaneous fact, parol evidence is receivable to prove that the recited fact is untrue, and that the recited consideration has not been paid at all, or has been paid on a different account; but if the instrument states a contractual consideration, parol evidence is not admissible to vary or contradict the consideration expressed."

22 C. J. 1171 is to the same effect, citing Watkins Salt Co. v. Mulkey, *et al.*, 225 Fed. 739, in the text of which we find:

"It is true that for some purposes parol evidence can be introduced to explain or amplify the consideration recited in a written contract; but this exception to the general rule does not permit proof of an oral agreement for the purpose of imposing an affirmative obligation on one of the parties of which there is no indication or suggestion in the written contract. If there were to be permitted on the theory of an inquiry into the consideration of the contract, the rule respecting the finality of written contracts would obviously be

abrogated. This was clearly stated in Howe v. Walker, 4 Gray (Mass.) 318 (1855), when the court said:

" 'Nor can you, under the guise of proving by parol the consideration of a written contract, add to or take from the other provisions of the written instrument. This would practically dispense * * * with that sound rule of the common law which finds in the written contract the exclusive and conclusive evidence of the intent and agreement of the parties, and will not suffer such written contract to be varied or affected by any contemporaneous parol agreement."

It is contended that Knabb's letter of July 21st, *supra,* by the second paragraph thereof, showed that the contract was not complete. Our construction of the language contained in the letter is that it showed a complete agreement but expressed hope that Reconstruction Finance Corporation might do something further, or that Mr. Knabb would like for them to do something further. The statement contained in this letter is comparable to the following conditions: A writes a letter to B saying, "I will sell you my bay horse Sam for $200.00 payable $100.00 cash and balance in 6 months for which you will give me your note, with 8% interest." On receipt of this letter B writes A, "I will buy your bay horse Sam for $200.00 and herewith enclose cash for $100.00 and my note for balance payable in 6 months with interest at 8%. I think, however, that I am paying you more than the horse is really worth and that you should furnish me enough feed to care for him for 6 months and thereby relieve me from the expense of feeding him until I have paid the balance of $100.00." No one would doubt that the sale is complete and that the note could not be defended upon the ground that A failed to furnish the feed for the horse for 6 months.

This rule is stated in Restatement of the Law, Contracts, page 68, Section 62, as follows:

"An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.

" 'Illustration:

" '1. A offers to sell B 100 tons of steel at a certain price. B replies, "I accept your offer. I hope that if you can arrange to deliver the steel in weekly installments of 25 tons you will do so." There is a contract but A is not bound to deliver in installments.' "

See also Turner v. McCormick, 56 W. Va. 161, 49 S. E. 28, 67 L. R. A. 853, 107 A. S. R. 904.

We must hold that the fourth question must be answered in the affirmative because the plaintiff was entitled to recover under the pleadings and proof and the amount of recovery was the principal and interest on the notes, plus attroney's fees. The amount of the principal and interest was a matter to be arrived at by simple calculation. It was the province of the court to tell the jury the correct result of such calculation. See 17 C. J. 1058. The amount of attorney's fees to be allowed plaintiff in case of recovery was stipulated between counsel.

The entire record reflects no reversible error. So the judgment is affirmed.

So ordered.

Affirmed.

WHITFIELD, P. J., concurs.

TERRELL, C. J., and THOMAS, J., concur in opinion and judgment.

CHAPMAN, J., dissents.

Justice Brown not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

CHAPMAN, J. (dissenting).—This cause is before the Court on writ of error to a final judgment entered by the Circuit Court of Duval County, Florida. The trial court, upon motion of counsel for the plaintiff below, directed the jury to find a verdict for the plaintiff at the conclusion of the taking of all the testimony, and on this directed verdict a judgment was entered.

The record shows that a default was entered against the defendant for the want of a plea or demurrer, but on application the default was vacated and the case went to trial on a plea of failure of consideration of each of the notes sued upon.

The material allegations of the plea showing the failure of consideration are, viz.: On or about July 15, 1936, plaintiff below agreed to sell to the defendant a certain tract of land situated in Baker County, Florida, for $15,000.00, when the defendant paid thereon $3,000.00 in cash and delivered to the plaintiff four promissory notes in the sum of $3,000.00 each, maturing in July, 1938, 1939 and 1940, respectively; that the plaintiff held the title to and was in position to convey to the defendant title to said land for the $15,000.00 by a sufficient legal instrument, free of all liens, except unpaid taxes; and that the agreement to convey by sufficient written instrument at the price and on the conditions that the land described as being located in Baker County, Florida, would be made within a reasonable time after July 15, 1936.

Pursuant to the agreement between plaintiff and defendant an instrument was prepared by the plaintiff and

transmitted to the defendant purporting to cover the agreement of the parties, wherein plaintiff was to sell to the defendant the Baker County lands for the total sum of $15,000.00, but plaintiff failed or omitted to place in said instrument a promise to convey, and upon discovery of the omission thereof, the defendant protested and demanded that the plaintiff perform its contract to deliver a good and sufficient contract in writing agreeing to convey title to the Baker County lands for which the notes sued upon were given; and during the time defendant paid the sum of $3,000.00 and interest on the $12,000.00, but on July 15, 1938, defendant refused to pay the next maturing note because the plaintiff failed to perform its agreement previously made on or about July 15, 1936, in which it agreed to convey the Baker County lands to the defendant and to deliver a written contract which would evidence the oral agreement. The defendant refused to make payment of the notes or any installment of interest thereon, after the plaintiff refused or declined to deliver an executory contract to the defendant for the notes sued upon, which were part payment of the purchase price of the land.

The plea further alleged that in July or August, 1938, the plaintiff, disregarding its contract made with the defendant and upon which it received the sum of $3,000.00 in cash and the notes sued upon, conveyed the title to the Baker County lands to one Duner, for value, without notice of the defendant's contract to purchase said lands, and the plaintiff, prior to the commencement of said suit, repudiated its contract to convey to the defendant the Baker County lands and the plaintiff is not in a position to perform its contract with the defendant because it does not have at the time of filing the plea title to the lands.

During the progress of the trial defendant applied for an

order permitting or allowing the filing of additional pleas, which was denied by the trial court. These pleas have been considered and we do not think or believe it necessary for a decision of this case to pass upon·the merits of the pleas offered during the trial and denied by the trial court.

The plaintiff offered in evidence a letter dated July 2, 1936, addressed to L. Knabb and signed W. C. Fordyce, Examiner, and contained language, viz.: 'Referring to our correspondence relative to the lands in Baker County, owned by the Flanders Trust, let me say that this agency now has authority to accept, with certain qualifications, your proposition to purchase the notes of Flanders Trust held by the corporation." On July 7, 1936, L. Knabb by letter replied, in which he in part said: "I have prepared my financial statement and am enclosing it to you and will give you Cashier's Check for $3,000.00 as soon as you notify me everything concerning the trade. * * * If this is all clear, you can proceed to draw necessary papers and I will execute them with you any time." On July 15, 1936, W. C. Fordyce sent to L. Knabb four notes in the sum of $3,000.00 each for his signature, and on July 21, 1936, L. Knabb wrote the plaintiff and transmitted, properly signed, the four notes and check for $3,000.00, making the total amount of $15,000.00; and Knabb in his letter to the plaintiff stated:

"I am buying these notes without recourse but as the deed to this property is in the old trust company name I think your company or the old defunct trust company receiver should make a quit claim title which would not bind them in any way except it would show you dont claim this land any longer than I could go in court and sue out me a deed and get me where I would have something for my money or as it is I don't get anything, please discuss this with your lawyer and I think he will advise this or something

similar, if you hold the two old notes and dont give me anything I cant do anything towards clearing up the title until the four years runs out and I have paid all the $15,000.00 which I don't think the land should stand in this shape. I think it should be claired up and run through the courts for my protection and your company.

"Let me hear from you along this line.

"Yours truly,

"(Signed) L. Knabb."

On July 27, 1936, the plaintiff replied to the letter of L. Knabb dated July 21, 1936, after receiving check and notes, in which the following language was used:

"Referring to your suggestion that the Central Republic Trust Company now execute a quit claim deed to you conveying the land in Baker County, Florida, held in the Flanders Trust, let me say that it does not seem probable that the Trust Company will be willing to do this unless and until you are able to surrender to the Receiver of the Trust Company the two notes for $19,330.61 and $71,154.20, that you have purchased from the Reconstruction Finance Corporation. This Corporation cannot surrender these two notes until you have paid the four notes for $3,000 each you have given to the Corporation in payment for the purchased notes. This Corporation must hold satisfactory security for the payment of your notes, and the only way we can suggest that the purchased notes can be released will be for you to deposit with this Corporation other and satisfactory collateral to be held pending the payment of the four notes of $3,000.00 each you have given to the Corporation.

"Obviously, if this Corporation were to surrender the two notes it holds as collateral, and you should be able to obtain

a quit claim deed from the Central Republic Trust Company, this Corporation would hold no security for the payment of your note.

"Please be advised that the two notes of the Central Republic Trust Company, as Trustee, for the Flanders Estate have been sold to you and, therefore, the Corporation is not in a position to intervene or take part in your negotiations with the Central Republic Trust Company looking to the perfection of the title to the land in question."

The record shows that during the trial of the cause it developed that many letters concerning the transaction passed between the parties. The letters offered in evidence show the existence of other letters between the parties, and counsel for defendant contended that the entire correspondence of the parties, or all the letters touching the transaction, should have been offered in evidence. It was the contention of counsel for plaintiff that the letters offered in evidence by the plaintiff threw light on the purchase of the Flanders notes described in the notes sued upon, but other correspondence between the parties, if offered in evidence, would show that the four notes sued upon and the $3,000.00 in cash was the agreed purchase price of the Baker County lands which Knabb bought or thought he was buying. The Reconstruction Finance Corporation, through Mr. Fordyce, represented to Knabb that the plaintiff owned the lands and controlled the title, but subsequently stated that it was an erroneous satement. The plaintiff sent agents into Baker County to inspect the lands and determine the value thereof. The record shows that only a few letters between the parties about the trade were offered in evidence and other letters between the parties concerning the transaction were not admitted into evidence.

The correspondence was conducted by W. C. Fordyce on stationery, viz.:

"Loan Agency
of the
Reconstruction Finance Corporation
164 West Jackson Boulevard
Chicago, Illinois."

The Central Republic Trust Company, Chicago, Illinois, at the time was in receivership and was due the Reconstruction Finance Corporation a large sum of money. The notes sued upon when sent to Knabb to sign were not made payable to the Reconstruction Finance Corporation, but were made payable to W. L. O'Connell, Receiver of the Central Republic Trust Company, and the notes were transferred to the Reconstruction without recourse by the Receiver of the Central Republic Trust Company. The date of the transfer of the notes sued upon is not shown, but it is alleged that the same occurred before maturity.

A study of the record shows that plaintiff in error paid $3,000.00 in cash and executed the four notes for the sum of $3,000.00 each to the defendant in error, and at the time he thought or believed he was buying title to timbered lands situated in Baker County, but the defendant in error contends that the plaintiff in error was not purchasing timbered lands, or a claim on timbered lands, but certain notes of the Flanders Estate described in the four notes sued upon. If the judgment stands, the plaintiff recovers of the defendant the sum of $15,000.00 and the plaintiff will own the Flanders notes described in the notes sued upon. The record here clearly shows that there was never a meeting of the minds between the parties. Knabb executed the notes sued upon, thinking or believing he was buying the timbered lands in Baker County, while the defendant in error thought or be-

lieved it was selling Knabb the Flanders notes described in the instrument sued upon. These conflicting issues are squarely presented in the defendant's pleas setting up want of consideration.

There was no attack made on the plea of want of consideration and testimony was offered in support of the issues tendered. Objections were made to evidence offered by the defendant in support of his plea on the grounds that the testimony so offered tended to alter or vary the terms of a written instrument, to-wit: the four promissory notes sued upon, and upon the theory that the plaintiff was a holder thereof in due course.

The correspondence offered in evidence during the trial was between the defendant Knabb and W. C. Fordyce, Examiner, and the stationery used had thereon the "Reconstruction Finance Corporation," and the notes sued upon were made payable to William L. O'Connell, Receiver of Central Republic Trust Company of Chicago. It is asserted on the record that the plaintiff to this suit is a "holder in due course." This Court, speaking through Mr. Justice Ellis, in the case of Young v. Victory, 112 Fla. 66, 150 So. 624, defined a "holder in due course" thusly:

"Mr. Victory was not a holder of the note in due course under the negotiable instruments law. See Sec. 6811, C. G. L., 1927. He obtained the note at a judicial sale. The maker was in default in the payment of interest, the price he paid being about 50 per cent of the face value. The order authorizing the receiver to sell had not been recorded. The note purported to be the property of a bankrupt and defunct organization. All these facts challenge the assumption that he had no notice of any infirmity in the instrument.

"While to constitute a holder of a promissory note a

'holder in due course' under the statute it may not be necessary that the transfer to him should have been in the 'regular course of business,' yet it has been held in many jurisdictions construing the Uniform Negotiable Instruments Act, the provisions of which defining a holder in due course are the same as those of Section 6811, C. G. L., *supra,* that the purchaser from a bank commissioner of the assets of an insolvent bank is not a holder in due course, see Ward v. Oklahoma State Bank, 51 Oklahoma 193, 151 Pac. Rep. 852; that a purchaser at a receiver's sale takes subject to all defenses. See Collis v. Kraft, 118 Kan. 531, 255 Pac. Rep. 862. Some courts hold that the question whether the holder of a note is a holder in due course is one for determination by the jury. Commonwealth Banking & Trust Co. v. Smith & Oby Co., 119 Ohio St. 516, 164 N. E. Rep. 751. Others held it to be a question of law. Arnd. v. Heckert, 108 Md. 300, 70 Atl. Rep. 416. Whether the common law rule defining a holder in due course to be one who acquired it in due course of business has been eliminated by the Uniform Negotiable Instruments Act is doubtful. See Drumm Const. Co. v. Forbes, 305 Ill. 303, 137 N. E. Rep. 225."

See Section 6811 C. G. L.; Wilson v. Sample, 118 Fla. 416, 159 So. 675; Sebring Co. v. Skinner, 100 Fla. 315, 129 So. 759; Sumter County State Bank v. Hays, 68 Fla. 473, 67 So. 109; Livingston v. Roberts' Ex'r., 18 Fla. 70; Prescott v. Johnson, 8 Fla. 391.

The record shows that the plaintiff Reconstruction Finance Corporation held the title to the 33,000 acres of timber lands situated in Baker County, as shown by the letter of W. C. Fordyce, Examiner, to the defendant, which is, viz. :

"Loan Agency of the
Reconstruction Finance Corporation
134 South LaSalle Street
Chicago, Illinois

"Mr. Lucius Nabb, January 17, 1936.
"Moniac, Georgia.

 "*Re:* Central Republic Trust Company (closed)
 Chicago, Illinois.
 Flanders Trust.

"Dear sir:

"The Reconstruction Finance Corporation holds, through assignment from the Central Republic Trust Company of Chicago, title to approximately 33,000 acres of land in Baker County, Florida. Examination of the records in this case disclose the fact that this land was leased to you, but that for a number of years you have made no accounting for the turpentine and timber removed from the property.

"The Central Republic Trust Company of Chicago, Trustees for the Flanders estate, is no longer in business, but all of its assets are pledged to the Reconstruction Finance Corporation. It therefore devolves upon this Corporation to administer the affairs of the Flanders Trust.

"Before proceeding further in this matter, we wish to ask whether you desire to consider the purchase of the property. If you do not care to consider it, the Corporation will undertake to dispose of it in some way. Please let us hear from you at your earliest convenience.

 "Very truly yours,

 "(Signed) W. C. Fordyce, Examiner."

In light of the material allegations of the different counts of the declaration and the plea of the defendant to each count thereof tendered issues of fact, conditions and circum-

stances within the knowledge of the plaintiff at the time of the acquisition of the notes which were sufficient to put the plaintiff on inquiry, about the land trade, as shown by the correspondence; and established thereby evidence of an infirmity of the notes that should have been settled by a jury under appropriate instructions. See Sample v. Hundred Lakes Corporation, 107 Fla. 568, 145 So. 193.

The witness Fordyce acted as Examiner for the plaintiff in handling the business of the defunct Central Republic Trust Company, and as such Examiner, wrote defendant Knabb the letter, *supra*, and voluminous correspondence developed prior to the defendant's executing the notes sued upon, but the notes were made payable by the said Fordyce to the Central Republic Trust Company and transferred to the plaintiff before maturity; and Fordyce, after handling the items, appeared as a witness for the plaintiff and no evidence of the consideration for which the notes were given was allowed on the theory that the purported evidence tended to alter and vary the terms of the written notes prepared by Fordyce in the name of Central Republic Trust Company and by Fordyce transferred to the Reconstruction Finance Corporation before maturity.

The plea set up a breach of an executory contract to sell the defendant the Baker County lands and it is alleged that the plaintiff had full knowledge thereof and that the executory contract to purchase the land was the sole and only consideration for the notes sued upon and that the plaintiff Reconstruction Finance Corporation had conveyed the lands to a Mr. Duner, who had no knowledge of the terms of purchase made by the defendant of the said land. The plea is fully supported by the case of Sumter County State Bank v. Hays, 68 Fla. 473, 67 So. 109.

For the errors committed during the progress of the trial of the cause in the lower court, I think the judgment appealed from should be reversed and a new trial awarded.