ALTENBERND, Judge.
Irma A. Walker and Dorothy I. Collins appeal an order of the probate court declaring that two bank accounts are assets in the estate of Lettie V. Combee. Ms. Walker and Ms. Collins were signatories on the two bank accounts along with Ms. Combee, and they had an express right of survivor-ship by virtue of the contractual language on the bank’s signature contract card. The trial court recognized that the bank’s signature contract cards invoked a statutory presumption that the accounts were joint accounts which became the property of these two women upon Ms. Combee’s death. § 658.56(1), Fla.Stat. (1987). That presumption could be rebutted only by “proof of fraud or undue influence or clear and convincing proof of a contrary intent.” § 658.56(2), Fla.Stat. (1987). Following an evidentiary hearing, the trial court ruled that the beneficiaries had satisfied their burden of proof to demonstrate a contrary intent. Recognizing that our decision may conflict with In re Alma S. Gainer, 579 So.2d 739 (Fla. 1st DCA 1991), we hold that the limited evidence presented to the trial court was insufficient under the clear and convincing standard to prove that Ms. Com-bee had an intent contrary to that demon *709 strated by the unambiguous language contained in the written contracts.
I. THE EVIDENCE

A.The Will

Ms. Combee died on August 21, 1988, at the age of eighty-two. Shortly after Ms. Combee’s death, Ms. Walker and Ms. Collins filed her will for probate. The will names Ms. Walker and Ms. Collins, who were Ms. Combee’s adult nieces, as co-personal representatives and co-trustees of a trust described in the will. The will was prepared by a local attorney and executed by Ms. Combee in February 1987. It was significantly amended by a codicil in April 1988. The will essentially placed all of Ms. Combee’s estate into trust to be distributed over a period of time to Ms. Combee’s two grandchildren. Ms. Combee’s estate consisted almost exclusively of real estate, valued in excess of $500,000. Although most of that real estate was income-generating, Ms. Combee recognized that liquid assets might be needed in order to carry out her wishes, and her will expressly states that it might be better to liquidate the real property to fulfill her intentions.

B.Prior Bank Accounts

In 1984, Ms. Combee had signed an earlier will which named Jerry Reynolds and Dollie Smith as copersonal representatives. It appears that Ms. Combee revoked this will when Mr. Reynolds stated that he no longer wished to be her personal representative and when Ms. Smith was no longer able to serve.
When the prior will was prepared, Ms. Combee established a money market account at Peoples Bank of Lakeland. The signature contract card for that account states that it was opened on December 4, 1984, and that it was a personal account. Immediately above Ms. Combee’s signature, the card contains two boxes which state "no survivorship intended” and “joint account-with survivorship.” The joint account option is clearly marked with two typed “x”s. The other names on the account were Mr. Reynolds and Ms. Smith. The card reflects, however, that Mr. Reynolds and Ms. Smith were deleted from the account on December 13, 1984, about two weeks after it was opened.
Ms. Combee had an active checking account at the Peoples Bank when the money market account was opened. On the same day that the money market account was opened, Mr. Reynolds and Ms. Smith were added to the checking account. On December 13,1984, this account was also modified so that Mr. Reynolds and Ms. Smith were deleted from the account, but a power of attorney was noted on the contract card. Thus, it is clear that Ms. Combee took affirmative steps to prevent these coper-sonal representatives from having a joint interest in her accounts. The reason for this change is not explained within the record, but the record does indicate that Ms. Combee was handling her own banking during this period.

C.Bank Accounts Subject to This Dispute

On January 20, 1987, two weeks before the probated will was executed, Ms. Com-bee added Ms. Walker and Ms. Collins to her checking account. There is no dispute that the contract for this checking account only allowed the two women to write checks and did not make them joint owners with a right of survivorship.
On February 9, 1987, a few days after the probated will was executed, Ms. Com-bee opened a money market account. This account created a joint account with Ms. Walker and Ms. Collins. The signature contract card contains virtually identical information as the money market account card Ms. Combee had signed two years earlier naming Mr. Reynolds and Ms. Smith as copersonal representatives. The signature card clearly indicates that it is a joint account with survivorship. The contract states:
OWNERSHIP OF ACCOUNT — The following provisions explain the rules applicable to this account depending on the form of ownership specified on the reverse side. Only the portion corresponding to the form of ownership specified will apply_ Joint Account-With Survivorship — Such an account is issued *710 in the name of two or more persons. Each .of you intend that upon your death the balance in the account (subject to any previous pledge to which we have consented) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship.
This time it appears that the copersonal representatives remained on the account and Ms. Walker wrote checks on the account during the last eighteen months of Ms. Combee’s life. At the time of Ms. Combee’s death, the money market account contained approximately $40,000.
Although the record does not contain the written contracts, the parties stipulated that Ms. Combee also had a savings account at Peoples Bank. The contract for this account included a right of survivor-ship for Ms. Walker and Ms. Collins. At the time of Ms. Combee’s death, the savings account balance was approximately $3000.
The banking records were introduced by stipulation. No representative of the bank provided any testimony in this case. Thus, there is nothing in this record to establish the content of any discussions that Ms. Combee may have had with bank representatives.
D. The Testimony
In support of their position that Ms. Combee clearly and convincingly had an intent concerning the money market account and the savings account, other than that expressed in those written contracts, the beneficiaries called four witnesses.
First, one of the grandchildren testified. She had seen her grandmother four times in the preceding four years. She knew her grandmother was not extravagant and did not give large sums of money to anyone. She testified at length concerning her own need for money from the estate.
Mr. Reynolds testified that he was a forty-year-old nephew with training in business and finance. During the two years that he was named as personal representative in Ms. Combee’s will, he saw her once or twice. He did not handle her affairs. It was not his understanding that he was to receive an interest in the bank accounts if Ms. Combee died. Because his name had been deleted from these accounts, his understanding of his rights under the accounts, of course, is consistent with the written terms of the accounts for all but the first two weeks of his tenure as the designated personal representative.
Ms. Collins testified that she was a niece and that Ms. Combee had been like a second mother when she was a child. She readily admitted that she did not regard the money in the account as hers while Ms. Combee was living, and that she had never placed any of her own money into the account while Ms. Combee was alive. Ms. Combee never told her that the account would become her property, but Ms. Com-bee did tell her that she would be well compensated for all of her help during the last months of Ms. Combee’s life. Ms. Collins testified that Ms. Combee was alert and knew “exactly” where “every penny” was until the last few months of her life.
Ms. Walker testified that she was also a niece and that she had visited Ms. Combee almost daily during the last eighteen months of Ms. Combee’s life. She had written checks and helped Ms. Combee with her business affairs during that time. Ms. Combee had told her that the money in these accounts would belong to the two nieces when she died. When Ms. Combee died, Ms. Walker used money from the checking account to pay most of the final medical bills and burial expenses. She paid some of these bills from the money market account, but she regarded the remainder of those funds and the funds in the savings account as joint assets of the two surviving women.
Ms. Walker and Ms. Collins called a single witness, a neighbor who lived on Ms. Combee’s property. The neighbor testified that she had known Ms. Combee for nine years and that Ms. Combee was a frugal woman. Ms. Combee had told the neighbor that the two nieces would be well taken care of when she died. Ms. Combee never told this neighbor that the joint accounts would be the source of this compensation.
*711 Based on this evidence, the trial court determined by clear and convincing evidence that the beneficiaries had overcome the presumption established by the written documents. Without re-weighing the evidence, we conclude that it is insufficient to overcome the presumption.
II. THE LAW
A historical review of the law concerning the rights of surviving, noncontributing signatories on bank accounts vis-a-vis the estate of the contributing signatory, suggests that the courts and the legislature have sometimes approached the problem from two different perspectives, giving emphasis to two different policies. This opinion will not attempt a thorough review of earlier case law, but two well-written articles warrant study. Note, Survivorship Rights in Joint Accounts, 24 U.Fla.L.Rev. 476 (1972); Warner, Joint Accounts and Decedent’s Estates-An Update, 61, no. 7, Fla.Bar J. 45 (1987). As the supreme court has recognized:
Prior to 1965, several different approaches had been taken by the courts in this state to address the question of entitlement to assets in joint accounts with rights of survivorship. This created much uncertainty in the law surrounding survivorship rights. These approaches included the tenancy theory, the gift theory, and the contract theory.
In re Estate of Holly Gainer, 466 So.2d 1055, 1057 (Fla.1985) (citations omitted). One commentator has even characterized the resulting diverse trial court approaches as “the subsequent muddle.” Survivorship Rights, 24 U.Fla.L.Rev. at 486.
In fairness to these judicial decisions, it should be observed that the courts were tending to examine these accounts on a case-by-case basis in order to achieve a just result under the specific facts. Common law courts are comfortable with such an approach. That method, however, was not entirely predictable. It certainly was not as economical or efficient as a more rigid rule. It created confusion and uncertainty for banks.
Beginning in 1965, the legislature has adopted statutory solutions for this problem, selecting a quick, predictable, and efficient solution over the more expensive, individualized judicial approach. In 1965, the legislature enacted a statute allowing the written savings agreement to be conclusive in the absence of fraud or undue influence. See Holly Gainer. That statute, however, applies only to savings and loan associations. See § 665.063, Fla.Stat. (1987) (originally enacted by ch. 65-468, Laws of Fla., codified at § 665.271, Fla.Stat. (1969)).
In 1971, the legislature enacted the law relating to banks which is involved in this case. Ch. 71-205, § 1, Laws of Fla. (codified at § 659.291, Fla.Stat. (1971), now § 658.56, Fla.Stat. (1987)). This section creates a presumption that a written signature contract which establishes a joint account with right of survivorship expresses the true intent of the signatories. This section provides: “The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent.” § 658.-56(2), Fla.Stat. (1987).[1]
In light of this statute, we conclude that the legislature intends for this problem to be solved under a contract theory as opposed to the earlier gift or tenancy theories. The statute expands the rule regarding the admission of parol evidence in cases involving multiple-party accounts in banks. Normally, if the rights of parties are resolved by a clear and unambiguous contract, parol evidence is not admitted to alter the expressed intent. Knabb v. Reconstruction Fin. Corp., 144 Fla. 110, 197 So. 707 (1940). The banking statute, however, creates a presumption which shifts the burden of proof to the estate under section 90.304, Florida Statutes (1987), and increases the burden to the clear and convincing standard. See Slomowitz v. Walker, 429 So.2d 797 (Fla. 4th DCA 1983). In *712 exchange for these burdens, the estate is permitted to introduce parol evidence.[2]
As previously noted, this opinion may conflict with the First District’s recent opinion in Alma Gainer. That ease involved a bank account and a separate checking account. Because the bank account was specifically described in the decedent’s will, the will may have evidenced a contrary intent. The evidence concerning the checking account in Alma Gainer, however, is quite similar to the evidence in this case. In Alma Gainer, the joint account signatories helped Ms. Gainer during the final years of her life, did not place any of their own funds in the account, and did not regard those funds as their own as long as Ms. Gainer was alive. The First District held that this testimony was “inconsistent” with “a completed inter vivos gift in the joint accounts.” Alma Gainer, 579 So.2d at 741. By footnote, the opinion indicates that the old elements of a common law gift survive as a method to rebut the statutory intent. We disagree.
The statute states that, through the appropriate signatory contract card,
all such persons ... depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights ... in respect of such deposits ... shall vest in the surviving account holder or holders.
§ 658.56(1), Fla.Stat. (1987). Thus, the statutorily presumed intent is not an intent to make an inter vivos gift, but rather an intent to vest the money in the surviving account holder at the moment of death. At least within the facts described in the Alma Gainer case, we perceive no clear and convincing evidence that Ms. Gainer had an intent on that issue different from that expressed in her account card. Accordingly, we believe we would have applied a different rule and reached a different outcome than did the First District concerning Ms. Gainer’s checking account.
III. APPLYING THE LAW TO THE EVIDENCE ■
This case does not involve allegations of fraud or undue influence. Thus, the beneficiaries of the estate were obligated to prove by clear and convincing evidence that Ms. Combee did not intend for the bank accounts to vest in the two nieces at the moment of her death. We recognize that the trial court could reject most of the testimony of Ms. Collins and Ms. Walker as self-serving. Without that testimony, we may have little testimony to buttress the intent expressed in the bank contract card, but we still have no evidence to establish a clear and convincing contrary intent. The fact that Ms. Combee lived a frugal life and did not give large sums of money to people during her life provides little more than speculation as to her intent to give money, at the time of her death, to two nieces who had provided substantial care to her in her final years. The fact that the earlier personal representative had different expectations is not convincing when his expectations are consistent with the documents which then existed and when his role in helping the deceased during her life was substantially different than the roles of Ms. Walker and Ms. Collins. Given that the estate contains assets which can be liquidated to fulfill Ms. Combee’s expressed intent for her grandchildren, her desire to pay money to those grandchildren does not demonstrate an intent contrary to the banking documents.
We recognize that our interpretation of the statute makes it difficult for an estate to overcome the statutory presumption through the use of circumstantial evidence. In the absence of a clear statement of a contrary intent by the deceased, or evidence of a contrary intent based upon testimony from the attorney who prepared the probated will, a bank employee or a person with special knowledge regarding the decedent’s estate plan, it will be difficult for the *713 estate to prevail in this type of case. A more flexible case-by-case method might create more equitable results for the individual parties in some cases, albeit at greater litigation expense. The legislature, however, has evaluated the merits of a flexible rule versus this more rigid and predictable solution and it has chosen the latter solution.
Reversed and remanded.
CAMPBELL, A.C.J., and HALL, J., concur.

. In 1980, the legislature enacted comparable legislation to control accounts in credit unions. Ch. 80-258, Laws of Fla. (codified at § 657.035, Fla.Stat. (1987)).

. This is not a case in which parol evidence is admissible to establish the joint account with right of survivorship. Compare Harrison v. Huber, 463 So.2d 1190 (Fla. 2d DCA 1985), and In re Clement, 568 So.2d 1297 (Fla. 2d DCA 1990) with Rosecrans v. Eden, 538 So.2d 970 (Fla. 5th DCA 1989). In this case, there is a clear and unambiguous written contract to invoke the statutory presumption.