149 So.2d 370 (1963)
ASPHALT PAVING, INC., a corporation, Appellant,
v.
Lennie L. ULERY, Ronald K. Ulery, Arnold D. Ulery and Carl D. Ulery, and Charles Ulery and Elsie Marie Ulery, minors, by Yula S. Burns as their next friend, Appellees.
No. D-276.
District Court of Appeal of Florida. First District.
January 29, 1963.
Rehearing Denied February 22, 1963.
*371 Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, for appellant.
Barnes & Slater and Crawford & May, Jacksonville, for appellees.
STURGIS, Judge.
Appellees, who are the widow and surviving children of Crawford E. Ulery (herein called "Ulery"), brought this suit *372 to obtain an adjudication that they were subrogated to certain rights of their co-plaintiffs, Westfield Corporation and Orr & Company, Inc. (herein called "Westfield" and "Orr"), against the appellant, Asphalt Paving, Inc. (herein called "Asphalt"), one of the defendants below. Their claim of subrogation is based on the theory that they were the beneficiaries (under Section 222.13, Florida Statutes[1]) of two $25,000 insurance policies on Ulery's life, who prior to death had assigned the policies to Westfield and Orr, respectively, as collateral security for debts of Asphalt, and that upon Ulery's death the entire proceeds of each policy had been paid to Westfield and Orr for application on such debts of Asphalt.
On a former appeal this court reversed an order of the circuit court dismissing the complaint as to Asphalt and remanded the cause for further proceedings. (119 So.2d 432.) Thereafter the trial court granted appellees' motion to strike Asphalt's amended answer, denied Asphalt's motion to further amend its answer, and on the pleadings entered final judgment in favor of appellees, hence this appeal.
The complaint against Asphalt and Gulf Life Insurance Company, the insurer in the two policies on Ulery's life here involved, alleged that during 1953 and 1954 Ulery was President and principal stockholder of Asphalt; that on April 13, 1954, being the owner of said policies, he assigned one to Westfield and the other to Orr as collateral *373 security for obligations then due by Asphalt to Westfield and Orr and also to secure future advances by assignees to Asphalt; that Ulery died on June 16, 1958, at which time Asphalt owed Westfield and Orr, respectively, amounts in excess of the proceeds of the respective policies assigned; that at the time of Ulery's death there was no named beneficiary in either of the policies and that by operation of Section 222.13, Florida Statutes, F.S.A., appellees became the beneficiaries thereof, subject only to said assignments to Westfield and Orr; that defendant Gulf Life Insurance Company refused to pay the proceeds of the policies either to Westfield and Orr or to the appellees. Appellees prayed the court to require the insurer to pay over the policy proceeds to Westfield and Orr pursuant to Ulery's assignment of the policies as security for Asphalt's debt, and to adjudicate that appellees were then subrogated to the rights of Westfield and Orr against Asphalt in the amount of such proceeds.
On motion of Asphalt the complaint was dismissed as to Asphalt on the premise that it failed to show that appellees had any right of subrogation against Asphalt. While a petition for rehearing on said order of dismissal was pending, Westfield and Orr moved for summary judgment against the insurer and furnished Asphalt with notice of the hearing thereon and a copy of the proposed summary judgment. The only issue presented by said motion for summary judgment was the right of Westfield and Orr to recover from the insurer the proceeds of the policies of insurance assigned to them by Ulery on April 13, 1954. Asphalt does not question Ulery's title to the policies at that time or the validity of the assignments to Westfield and Orr and did not appear at the hearing on said motion for summary judgment. Pursuant to said motion the trial court found that there was no genuine issue as to Ulery's ownership of the policies on the date he assigned them to Westfield and Orr as collateral security for Asphalt's debt, or as to the validity of his assignments, or as to the fact that the amount of the debts so secured exceeded the amount of the proceeds of the policies; and thereupon entered summary final judgment in favor of Westfield and Orr against Gulf Life Insurance Company in the amount of the entire proceeds of the two policies.
The petition for rehearing of the mentioned order dismissing the complaint as to Asphalt was denied and on appeal that order was reversed (119 So.2d 432), and Asphalt then filed its amended answer admitting that Ulery validly assigned the policies to Westfield and Orr to secure Asphalt's debts; admitting that at Ulery's death the debts so secured exceeded the amount of the policy proceeds, and that on Ulery's death Westfield and Orr became entitled to all the proceeds of the policies.
Asphalt's answer denied, however, that Ulery was the owner of the policies at the time of his death and denied that appellees were entitled to be subrogated to Westfield and Orr's rights against Asphalt; and thereunto alleged that in November 1956, Asphalt was indebted to various corporations owned and controlled by Wayland T. Coppedge (herein called "Coppedge Corporations") in a substantial sum which it was unable to pay; that Coppedge Corporations agreed to forbear suit thereon in consideration of Asphalt's execution and delivery to them of a promissory note covering said indebtedness, and in consideration of Ulery's personal endorsement of the note in blank; that subsequently Ulery requested that he be released from liability on his endorsement of the note and in consideration for such release offered to assign to Coppedge Corporations, or their nominee, all of the outstanding stock in Asphalt and all of his right, title and interest in the said life insurance policies, subject to the then existing assignment to Westfield and Orr as collateral security for Asphalt's debts to them; that Coppedge Corporations accepted said offer and on January 23, 1957, executed and delivered to Ulery an instrument releasing him from liability as endorser of *374 said note, and in consideration thereof Ulery simultaneously assigned to Coppedge Corporations all the outstanding stock in Asphalt and at the same time, in order to carry out his agreement to assign the life insurance policies to Asphalt, wrote identical letters to Westfield and Orr as follows:
"Gentlemen:
"This is to advise you that upon payment or satisfaction of the indebtedness for which you hold as collateral an assignment of life insurance on my life, issued by Gulf Life Insurance Company, being policy # * * * [the correct policy number is set forth in each letter], the policy is to be reassigned to Asphalt Paving, Inc., the owner of the policy, rather than to myself. The beneficiary of the policy upon its reassignment is to be Asphalt Paving, Inc.
 "Very truly yours,
 "C.E. Ulery";
that said letters were delivered to Wayland T. Coppedge on behalf of Asphalt; that Ulery thereby divested himself of all beneficial interest in the policies and Asphalt thereby acquired all such interest and became in equity the beneficiary of the policies, so that appellees had no interest therein at the time of Ulery's death.
Pending motion of appellees to strike said answer, Asphalt moved for leave to file an amendment thereto adding two additional defenses, which were tendered. One of the additional defenses so tendered alleged that at a time when Asphalt had no right, title or interest in the policies and while Ulery was in control of Asphalt, he wrongfully diverted funds of the corporation to the payment of premiums on the two policies in the aggregate amount of $9,119.68, and by reason thereof Asphalt claimed a lien against the proceeds, subject only to the prior rights of Westfield and Orr. The other defense so tendered alleged that the use of Asphalt's funds to pay said premiums constituted Asphalt the cestui que trust of a constructive or resulting trust in the proceeds of the policies, and thereby created in Asphalt equities tantamount to the equities, if any, of the appellees.
On motion of appellees the trial court entered the order and judgment appealed, denying Asphalt's said motion to further amend, striking Asphalt's amended answer, and entering judgment for appellees against Asphalt in the amount of $50,000.00 plus interest.
The issues on appeal may be summarized as follows: (1) whether Asphalt's second defense alleges facts which, if duly established by the proofs, would operate to deprive appellees of any interest in the subject policies of insurance. (2) Whether the trial court erred in denying Asphalt's motion to further amend its answer. (3) Whether the summary judgment entered against the insurer herein precludes Asphalt from raising the defenses presented herein. For the purpose of passing on appellees' motion to strike Asphalt's amended answer, all well-pleaded allegations of fact are to be taken as true.
The theory of Asphalt's second defense is that Ulery, by the hereinabove quoted letters addressed to Westfield and Orr, respectively, and delivered to Wayland T. Coppedge as agent for Coppedge Corporations, made a complete assignment of his interest in the subject insurance policies to Coppedge Corporations, subject only to the rights of Westfield and Orr who held said policies by prior assignments from Ulery as collateral security for payment of Asphalt's then existing indebtedness to Westfield and Orr, and to secure any indebtedness of Asphalt to Westfield and Orr thereafter accruing. As part of said defense Asphalt attached a copy of a release agreement between Coppedge Corporations on the one part and Ulery on the other, whereby the former, in consideration of the assignment and transfer by Ulery of 75 shares of common stock in Asphalt, was discharged of all liability on his personal endorsement of the above mentioned note from Asphalt covering *375 its indebtedness to Coppedge Corporations. Said release recites no other consideration therefor, but Asphalt contends that said letters to Westfield and Orr constituted an assignment of Ulery's interest in the policies to Asphalt, and that such was part and parcel of the consideration for Coppedge Corporations' release of Ulery from liability as endorser of the Asphalt note. In disposing of this contention the judgment appealed notes that Asphalt presently relies on these undelivered letter exhibits to show a change of beneficiary or a further assignment of the policies of insurance which had already been assigned so as to make Asphalt the beneficial owner of said policies, and thereunto observes:
"The policies of life insurance here involved provide a method by which the beneficiary of each of the policies might be changed, and such method requires the endorsement of such change of beneficiary on the insurance policy by the insurance company. There has never been any contention by the defendant that there has been any change of beneficiary or ownership of the policies in compliance with the provisions of the policies, but merely that a change in ownership of the policies was made by the exhibits. The question of whether these letter exhibits were sufficient to effect a change in ownership of the policies has been answered adversely to the contentions of the defendant by the Supreme Court of Florida in the cases of Sheppard v. Crowley, 61 Fla. 735, 55 So. 841; Warren v. Prudential Insurance Co. of America, 138 Fla. 443, 189 So. 412; and Miller v. Gulf Life Insurance Co., 152 Fla. 221, 12 So.2d 127.
"The release agreement itself, however, shows on its face, that the decedent Ulery, was released from personal liability on a certain promissory note, of which the defendant corporation was the maker, in consideration of the decedent, Ulery, transferring and assigning to one Wayland T. Coppedge absolute unconditional title to seventy-five shares of the capital stock of the defendant, which the defendant alleges in its answer was all of the outstanding capital stock of the defendant corporation. This release agreement does not recite the transfer of ownership of the policies of life insurance here involved as part of the consideration, nor is their [sic] any consideration for such transfer recited or referred to in the two letters, Exhibits B and C; and the answer itself contains no allegation of any consideration passing for any transfer in ownership of the policies of life insurance except the release of the decedent, Ulery, from personal liability on the said promissory note, which said release, according to the written instrument itself, Exhibit A, was given in consideration of the transfer of the absolute, unconditional title to the said outstanding capital stock of the defendant corporation by the said Ulery to the said Coppedge. Defendant's amended answer is insufficient as a defense to plaintiffs' complaint. In other words, the only consideration defendant has ever alleged as passing to the said Ulery for his transferring ownership in the insurance policies, is contradicted by the very exhibit that defendant has made a part of its answer to show consideration for such a transfer."
The assignment relied on by Asphalt is equitable in nature, and it is the general rule that no particular words of art are necessary to effect it. 3 Fla.Jur., Assignments, Sec. 12, page 141; 4 Am.Jur., Assignments, Sec. 76, page 288; 6 C.J.S. Assignments § 58, page 1101. Any words or transactions showing an intention on one side to assign and on the other to receive, if supported by a valuable consideration, will operate as an effective equitable assignment. Sammis v. L'Engle, 19 Fla. 800. Thus in Mutual Ben. Life Ins. Co. v. Swett, 222 F. 200 (C.C.A. 6th 1915), it was held that *376 where a bank holding as collateral security for a loan policies of insurance in which the insured's wife was named as beneficiary is given a letter from the insured directing the bank, in the event of the death of insured, to apply any balance of the insurance proceeds remaining after payment of the bank loan on account of the debt of the insured to another creditor, named Hackley, such letter to the bank
"* * * was explanatory and confirmatory of his [Swett's] original intent and passed by way of assignment whatever value the policy possessed * * * [After the prior assignment to the bank]. He was not restricted to a single assignment of the policy." (Emphasis supplied.)
There is a clear distinction between the rules governing those provisions of insurance policies relating to a change of beneficiary and those relating to an assignment of the policy. Generally, the mode prescribed in the policy for making a change of beneficiary must be adhered to, but failure to strictly comply with provisions requiring notice to the insurer of an assignment will not invalidate the assignment unless there is an unequivocal provision to such effect. See, 2 Appleman, Insurance Law and Practice, Sec. 1218, page 677; 6 Couch, Cyclopedia of Insurance Law (1930 Ed.), Sec. 1458(m); Cooley's Briefs on the Law of Insurance, Vol. II, pages 1827-1828; Richards on Insurance, Vol. I, Sec. 140, page 539.
In Miller v. Gulf Life Ins. Co., 152 Fla. 221, 12 So.2d 127 (1943), the Florida Supreme Court clearly recognized the mentioned distinction. The court there pointed out that the decisions in Sheppard v. Crowley, 61 Fla. 735, 55 So. 841 (1911), and Warren v. Prudential Insurance Co. of America, 138 Fla. 443, 189 So. 412 (1939), established as the law of this state that strict compliance is necessary as to policy provisions governing change of beneficiary, but held that this principle had no application to a parol gift of a life policy which "rests upon an entirely different ground," saying:
"The principles laid down in those cases would be controlling here, no doubt, if the facts in the present case were not sufficient to support the gift.
But those cases turn on the question of attempted change of beneficiary not made in strict accordance with policy requirements; while this case turns upon the law applicable to a parol gift of a life insurance policy to one having an insurable interest, and rests upon an entirely different ground.
"There is a clear distinction between the right of a policy holder to make a parol gift of a life insurance policy on his own life and in his possession and control; and the right of such policy holder to exercise the privilege of making change of beneficiary, secured to him by the terms of the policy. In the absence of an express provision in such policy, creating vested rights in the beneficiary, the right of the assured to pass title thereto by gift is a legal right flowing out of the incidents of ownership; to be exercised by him in the same manner that he may exercise that right in regard to any other chose in action. * * * The privilege given to the assured to change the beneficiary of his policy is in the nature of a power created by his contract with the company to be exercised by him only in strict accordance with the terms of the instrument creating it. * * *"
The alleged letters from Ulery to Westfield and Orr do not recite any consideration for the equitable assignment indicated thereby, and it is appellees' position that this circumstance, coupled with specific recitation of consideration as contained in the formal release given by Coppedge Corporations to Ulery, presents a situation barring the use of parol evidence to establish any consideration for Ulery's assignment of the policies *377 to Asphalt. It is well settled that parol evidence is admissible to establish the actual consideration supporting a written contract of the nature here asserted. It is also well settled that parol evidence is available to connect several written instruments as being parts of one transaction. 20 Am.Jur., Evidence, Sec. 1093, page 955; Jackson v. Parker, 153 Fla. 622, 15 So.2d 451, at page 460 (1943). If it be a fact, as alleged, that the formal release given to Ulery by Coppedge Corporations was for a consideration in addition to that recited therein, it is competent, consistent with other rules of evidence, to establish such by parol testimony. Asphalt's answer does not allege a unilateral or executory agreement on Ulery's part to assign the policies, but rather that the consideration flowing from Ulery to Coppedge Corporations for release of his liability as endorser of Asphalt's note was both the transfer to Coppedge of Ulery's stock in Asphalt and the contemporaneous execution and delivery to Coppedge of the letters addressed by Ulery to Westfield and Orr reflecting an equitable reassignment of the policies to Asphalt, subject to the rights of Westfield and Orr under the prior assignments to them. Parol evidence of such a transaction is admissible, even when it shows a different consideration than that recited in an instrument. See 1 Restatement of Contracts, Sec. 82, page 93.
Parol testimony cannot be given, however, to vary a contractual consideration or impose a new obligation upon one of the parties. Knabb v. Reconstruction Finance Corporation, 144 Fla. 110, 197 So. 707 (1940), approves this principle by quoting, as follows:
"In 10 R.C.L. 1044 it is said: `Contractual statement.  The rule permitting the true consideration of written contracts to be inquired into by parol evidence does not apply where the statement in the contract as to the consideration is more than a mere receipt or acknowledgment of payment, and is of a contractual nature. If the consideration is expressed merely as a recital of a precedent or contemporaneous fact, parol evidence is receivable to prove that the recited fact is untrue, and that the recited consideration has not been paid at all, or has been paid on a different account; but if the instrument states a contractual consideration, parol evidence is not admissible to vary or contradict the consideration expressed.'
"22 C.J. 1171 is to the same effect, citing Watkins Salt Co. v. Mulkey et al. [2 Cir.], 225 F. 739, in the text of which we find:
"`It is true that for some purposes parol evidence can be introduced to explain or amplify the consideration recited in a written contract; but this exception to the general rule does not permit proof of an oral agreement for the purpose of imposing an affirmative obligation on one of the parties of which there is no indication or suggestion in the written contract.'"
Appellees insist that the statement of the consideration as contained in the formal release given to Ulery is not a recital but a contractual consideration which cannot be varied by parol evidence. This interpretation, however, does not comport with the facts asserted by Asphalt's answer, which for the purposes of appellees' motion to strike must be taken as true. At this stage of the proceeding the allegations of Asphalt's answer relating to consideration for the formal release reflects the existence of contemporaneous or precedent facts connected with the subject of the actual consideration involved, and the answer is not construable as expressing the existence of a consideration that is executory or contractual in nature.
In Deutser v. Marlboro Shirt Co., 81 F.2d 139 (4th Cir.1936), the decedent made a contract under which he gave a promissory note and assigned insurance policies *378 on his life, the consideration for which was expressed as follows:
"That party of the first part, in consideration of a bill of merchandise purchased * * * and the receipt of the merchandise is hereby acknowledged * * *."
The appellate court held that the consideration so expressed was a mere recital and that parol testimony was available to establish a different consideration, saying (at page 143):
"The contention that the consideration expressed in the instruments is executory or contractual cannot be sustained. There is no promise that the shirt company will deliver merchandise in consideration of the execution of the note and assignment, but a recital that merchandise has been delivered and a receipt acknowledging its delivery."
See Flynt v. Garmon, 275 S.W. 444 (Tex. Civ.App. 1925); Wellmaker v. Wheatley, 123 Ga. 201, 51 S.E. 436 (1905); 9 Wigmore on Evidence (3rd Ed.), Sec. 2433, page 109; 32 C.J.S. Evidence § 953, page 885.
We hold, therefore, that the parol evidence rule, standing alone, does not operate to preclude the appellant from establishing by competent evidence that part of the consideration for Ulery's letters purporting to make an equitable assignment of the policies to Asphalt was the formal release given to Ulery by Coppedge and Coppedge Corporations of Ulery's liability as endorser of the Asphalt note. We pretermit discussion, however, of such evidentiary questions as may arise under the Dead Man's Statute with respect to transactions between Ulery and the appellant.
Assuming arguendo that Asphalt is capable of establishing its affirmative defense by competent evidence, it follows that as between Asphalt and the appellees, as statutory successors in interest of Ulery's interest in the policies, his equitable assignment thereof to Asphalt would be valid, notwithstanding his failure to strictly comply with provisions of the policies relating to assignment thereof.[2] Such provisions are solely for the benefit of the insurer, to protect it from double liability.
The trial court apparently had the view that the issues raised by Asphalt's amended answer and its tendered third and fourth defenses were res judicata by reason of the summary judgment previously entered in favor of Orr and Westfield against Gulf Life Insurance Company. In paragraph 7 of the judgment appealed the court said:
"All of the allegations of plaintiff's complaint have now either been admitted by the defendant or adversely adjudicated to defendant's contentions by the said summary judgment entered by the court on July 20, 1959."
In paragraph 8 of the judgment the court said:
"All of the allegations of plaintiff's complaint having been either admitted by the defendant or adjudicated by said summary judgment of this court, dated July 10, 1959."
And in paragraph 6 of the order, the court referred to the entry of said summary judgment as having been made
"* * * while the defendant was a party to this cause and bound by such judgment."
Furthermore, in its prior order striking Asphalt's original answer, the court said:
"That in all proceedings in this cause prior to and at the time of entry of *379 said summary judgment, the defendant, Asphalt Paving, Inc., was a party to this cause, and, therefore, was privy to said judgment, and said judgment having become final, any matter or thing found, determined and adjudicated in and by said judgment is binding on said defendant, and is determinative of any of its rights which were adjudicated therein."
The fact is, however, that the summary judgment against Gulf Life Insurance Company did not involve any of the issues between appellees and Asphalt. The sole point adjudicated thereby was the paramount right of Orr and Westfield to the proceeds of the policies under Ulery's prior assignments to them, and this was never disputed by any of the parties to the suit. It seems that the trial court also adopted the view that the summary judgment adjudicated, inter alia, that Ulery was the owner of the policies at the time of his death, subject only to the Westfield and Orr claims. Thus, in an order entered prior to the judgment appealed, by which Asphalt's original answer was stricken, the court said:
"* * * in and by said summary final judgment it was found and determined by this Court that the decedent, Ulery, was the owner and holder of the said insurance policies. It, therefore, follows that this Court has already adjudicated that the decedent, Ulery, was in fact, the owner of said policies and the defendant is not now entitled to deny the truth of such adjudication as a defense to plaintiffs' Complaint."
* * * * * *
"* * * it appears that any question of ownership of the policies has already been adversely found, determined and adjudicated against the contentions of defendant in and by the said summary final judgment where it was determined that the decedent, Ulery, was the owner of the subject insurance policies, based on the affidavits filed in support of the motion for summary judgment, which the defendant did not, in any way, deny; and the defendant is not now entitled to dispute the truth of such a factual matter which formed a basis for the entry of summary judgment."
As said summary judgment against the insurer was not between the same parties as this appeal, was not based on the same issues and did not litigate the same facts, it did not operate to bind the parties to this appeal upon the issues here presented. Prall v. Prall, 58 Fla. 496, 50 So. 867, 26 L.R.A.,N.S., 577 (1909); Bagwell v. Bagwell, 153 Fla. 471, 14 So.2d 841 (1943); Gordon v. Gordon, 59 So.2d 40 (Fla. 1952).
The remaining question is whether it was error to deny Asphalt's motion for leave to amend its amended answer by adding tendered defenses numbered three and four. The order appealed made the following observation in denial of the motion:
"That the defendant, since the filing of the mandate of the District Court of Appeal, First District, in this Court on April 27, 1960, (Ulery, et al, v. Asphalt Paving, Inc. (Fla.App. 1960) 119 So.2d 432), has been afforded ample opportunity to file such defenses or amended defenses as might be sufficient to state a defense to plaintiffs' complaint, and having failed to file sufficient defenses, is not now entitled to further amend."
As we have concluded that it was error to summarily enter the order appealed on the basis of the pleadings alone, the ends of justice under the law dictate that the reversal be without prejudice to the right of the appellant to again apply to the trial court for leave to amend its answer, and it is so ordered.
Holding, as we do, that Asphalt's amended answer states a lawful defense that should be put to proof, the order appealed must be and it is reversed. This cause *380 is remanded for proceedings consistent herewith.
Reversed.
CARROLL, DONALD K., C.J., and RAWLS, J., concur.
NOTES
[1] F.S. 222.13, F.S.A., provides:

"Life insurance policies; disposition of proceeds. Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the surviving child or children and husband or wife of such person in equal portions, or to any person for whose use and benefit such insurance is declared in the policy; and the proceeds thereof shall be exempt from the claims of creditors of the insured unless the insurance policy declares otherwise; provided, however, that whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his executors, administrators or assigns, the proceeds of the insurance may be specifically bequeathed by the insured to any person whatsoever or for any uses in like manner as he may bequeath or devise any other property or effects of which he may be possessed, and which shall be subject to disposition by last will and testament, and the proceeds of any such policy so bequeathed shall be paid to the personal representative of the insured's estate for distribution to such legatee or legatees and such proceeds shall be exempt from the claims of creditors of the insured unless the will declares otherwise; provided further, however, that whenever the insurance is for the benefit of the estate of the insured or is payable to the estate or to the insured, his executors, administrators or assigns, and in the event the insured should die intestate or die leaving a will which does not specifically bequeath the proceeds of any insurance in effect on the life of the decedent, such proceeds of any policy in effect at the time of the death of the insured and made payable as above provided, shall be paid to the personal representative of the insured's estate for the benefit of the surviving child or children and husband or wife in equal portions, and be distributed without regard to §§ 734.03 and 734.04 upon the order of the county judge on petition of any interested party or like proceedings pursuant to § 734.25(5); and if insured leaves surviving no child or spouse, then such proceeds shall be payable to such personal representative and constitute a part of the assets of the said estate.
"When the personal representative of insured's estate is required by law or by order of the county judge to file bond, the condition of the bond of the personal representative shall include the faithful performance of the duties of such personal representative according to law with respect to such proceeds.
"If the county judge determines that administration of the insured's estate is unnecessary and insured is survived by a child or children and husband or wife, the order of no administration necessary shall direct payment of the proceeds of any such policy to said child or children and husband or wife in equal portions; if there be no child or spouse surviving, payment of such proceeds shall be made as directed in such order.
"Payments as herein directed in every such case shall discharge the insurer from any further liability under the policy."
[2] The assignment provision of the policies in suit reads as follows:

"C. No assignment of this policy shall be binding upon the Company unless filed in duplicate at the Home Office, one to be retained by the Company and the other to be returned to the Insured. The Company assumes no responsibility for the validity of any assignment."