450 So.2d 258 (1984)
Charles C. GILES, et al., Appellants,
v.
SUN BANK, N.A., Etc., et al., Appellees.
No. 82-1479.
District Court of Appeal of Florida, Fifth District.
April 19, 1984.
Rehearing Denied May 22, 1984.
*259 James W. McCann of Graham, Phillips, McCann & Edwards, Orlando, for appellants.
David C. Beers of Malone & Beers, Orlando, for appellees.
FRANK D. UPCHURCH, Jr., Judge.
Appellants Charles C. Giles and Gator Grassing, Inc., third party claimants below in this garnishment action, appeal from a judgment in favor of appellee, Sun Bank N.A.
In October, 1981, Sun Bank obtained a judgment for $10,790.08 against Orange Valley Farms, Inc., defendant below, for breach of a promissory note. In an effort to satisfy this judgment, Sun Bank, in December, 1981, moved for a writ of garnishment against McCormick-Conduit-Buckley, a joint venture engaged in construction at Disney's Epcot Center. Sun Bank sought to garnish funds which McCormick allegedly owed to Orange Valley arising out of a contract ("primary subcontract") executed by McCormick and Orange Valley in 1979. By this "primary subcontract," Orange Valley was to complete the sodding of a portion of the Epcot Center being developed by McCormick.
McCormick answered the writ of garnishment and alleged that it was not currently indebted to Orange Valley because the latter had assigned to Gator Grassing, Inc., its right to payments under the "primary subcontract." Giles, president of Gator Grassing, subsequently filed an affidavit in support of third-party claim, averring that McCormick had in its possession $46,544.47 to which Gator Grassing and not Orange Valley was entitled based on an assignment which was in the form of a document labeled *260 "employment agreement." This "employment agreement" was executed by Giles and Orange Valley in January, 1981, and provided that Giles would take charge of Orange Valley's Disney operations and carry out the contract between Orange Valley and McCormick. Paragraph three of the agreement provided:
Employee [Giles] shall, from time to time, arrange for all additional capital necessary for the conducting of the business of the Company as hereinabove described and receive for deposit all monies earned pertaining to said contract to use for the benefit of the Walt Disney World operations.
The record reveals that in February, 1981, McCormick approved of the "employment agreement"[1] and that Giles subsequently executed an assignment of his rights to Gator Grassing. Gator Grassing completed the sodding between February and December, 1981, and during the performance of the work, McCormick made payments to Gator Grassing. It was just before the final draw was to be paid by McCormick ($46,544.47) that Sun Bank filed its writ of garnishment.
The parties agreed below that the issue was whether a valid assignment had occurred and they further agreed that if it did, it would be superior to Sun Bank's garnishment since McCormick had notice of the alleged assignment in February, 1981, and Sun Bank did not serve its writ of garnishment on McCormick until December 15, 1981. See Boulevard Nat. Bank of Miami v. Air Metal Ind., 176 So.2d 94 (Fla. 1965); Oper v. Air Control Products, Inc., 174 So.2d 561 (Fla. 3d DCA 1965). The trial court ruled that the "employment agreement" did not constitute a valid assignment of the "primary subcontract" and concluded that the funds possessed by McCormick constituted a debt due to Orange Valley and hence were subject to garnishment. We believe the "employment agreement" did amount to a valid assignment and reverse.
Sun Bank claims that since the document in question was labeled as an "employment agreement," it was obvious that the parties did not intend an assignment. However, we believe that the agreement here constitutes an equitable assignment for which no particular words of art are necessary. See Asphalt Paving, Inc. v. Ulery, 149 So.2d 370 (Fla. 1st DCA 1963). Under this theory, courts of equity can recognize certain kinds of instruments as valid equitable assignments, where it is necessary to effectuate the plain intent of the parties or where to hold otherwise would be unjust. See Morrow v. Commonwealth Life Ins. Co., 118 Fla. 371, 159 So. 525 (1935). No particular words or form of instrument is necessary to effect an equitable assignment and any language, however informal, which shows an intention on one side to assign a right or chose in action and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment. Asphalt Paving, 149 So.2d at 375. See also McClure v. Century Estates, 96 Fla. 568, 120 So. 4 (1928). As stated in McClure, the true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming as assignee. 120 So. at 10.
Here it is obvious from the "employment agreement" that Orange Valley intended to assign its rights and duties under the "primary subcontract" to Giles and Giles intended to receive such an assignment. Under the agreement, Giles was to take over and complete the "primary subcontract," providing all capital needed and receiving all monies due. Orange Valley was to have no further interest in performance of the contract except to share in any profits upon completion. Hence this case is unlike Health Application Systems v. *261 Hartford Life, 381 So.2d 294 (Fla. 1st DCA 1980), which involved a mere agreement to pay a debt out of a designated fund, which does not operate as a legal or equitable assignment since the assignor retains control over the subject matter. All parties involved here treated the arrangement as an assignment as McCormick subsequently made all payments due directly to Giles and Gator Grassing. Indeed, McCormick had made payments to Giles and Gator Grassing and it was only the final draw that remained due which Sun Bank sought to garnish.
We conclude that the trial court was misled by form when the substance of the agreement, as interpreted and performed by the parties, reflected an assignment.
REVERSED and REMANDED for entry of judgment for appellants.
DAUKSCH, J., concurs.
SHARP, J., concurs specially with opinion.
SHARP, Judge, concurring specially.
While I agree with the result reached by the majority, I disagree with the analysis and basis employed. No mention is made of the possible impact of the Uniform Commercial Code, which Florida adopted in 1966 and extensively amended in 1972. The code should provide the framework for all decisions in the area of commercial law.
This case involves a priority conflict between an assignee of a contract and a subsequent garnishor of the assignor's interest in the proceeds of that contract. If the assignment in this case had been an assignment for security or for financing purposes, the bank clearly would be the winner. Neither Gator Grassing, Inc. nor Giles filed a financing statement, as required by section 679.302(1), Florida Statutes (1983), and the employment document was possibly insufficient to constitute a security agreement under section 679.203, Florida Statutes (1983).[1] In such a case, the bank would have obtained a lien on the proceeds as of the date it served the writ of garnishment;[2] and it would have had priority over Gator as holder of an unperfected security interest.[3] Section 679.301(3), Florida Statutes (1983), provides:
A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of the appointment.
The assignee's giving notice to the obligor (McCormick) under the contract is really irrelevant in a contest with a lien creditor.[4]
*262 But, as the majority points out, this assignment to Giles and subsequently to Gator Grassing was not for security. It was a transfer of all the rights of the assignor to receive all of the funds, and in addition, the assignee had the responsibility for completing all of the work left to be done under the contract, and had to pay all of the costs and expenses.[5] At the time of the assignment, the obligor (McCormick) owed nothing to Orange Valley. At the time of this lawsuit, Gator Grassing or Giles had performed the balance of the contract and had earned and been paid in excess of $300,000.00. Only a retainage of $46,544.47 remained, which was earned during the course of this litigation by Gator Grassing. Gator Grassing actually lost money performing this contract, since it had unpaid expenses of $54,943.64, but only was due to be paid $46,544.47.
Although the documentation of this contract transfer was unclear, piercing through to the substance, it is obvious Orange Valley assigned this service contract completely to Gator Grassing, and the obligor, McCormick, accepted and agreed to the assignment and performance by the assignee.[6] Under these circumstances, the assignment was excluded from Article 9 by section 679.104(6), Florida Statutes (1983):
This chapter does not apply ... to a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract....[7]
This transfer was not a sale or an assignment covered by the code, and therefore the filing and the priority provisions do not apply. See American East India Corporation v. Ideal Shoe Company, 400 F. Supp. 141 (E.D.Pa. 1975), aff'd, 568 F.2d 768 (3d Cir.1978).
By the assignment to and performance of the contract by Gator Grassing, the funds earned under it belonged to Gator Grassing rather than to Orange Valley. In a garnishment action, the garnishor steps into the shoes of the debtor,[8] and if no funds are then held by the garnishee for the account of the debtor, the garnishment must fail. The funds here belong to Gator Grassing. This is why Gator Grassing wins in this case.[9]
NOTES
[1] Actually, Orange Valley and Giles had initially executed a document labeled "subcontract agreement" which was similar to the "employment agreement" but provided Giles was an independent contractor. McCormick insisted that the document be revised and designated an "employment agreement." The apparent purpose for this was to avoid the possibility of invalidating the performance bond which Orange Valley had.
[1] See Shelton v. Erwin, 472 F.2d 1118 (8th Cir.1973).
[2] Oper v. Air Control Products, Inc. of Miami, 174 So.2d 561 (Fla. 3d DCA 1965), 6 Am.Jur.2d Attachment and Garnishment § 455 (1963).
[3] 13 Fla.Jur.2d Creditors Rights and Remedies §§ 115-117 (1979). Whether service of a writ of garnishment gives rise to a legal or equitable lien, it is sufficient to bring the funds into the hands of the court, just as would the physical seizure of a tangible res. 6 Am.Jur.2d Attachment and Garnishment, supra note 2, at § 485. Accordingly, a garnishor should qualify as a lien creditor under section 679.301(3), Florida Statutes (1983). See In re Matter of Equitable Dev. Corp., 617 F.2d 1152 (5th Cir.1980); In re Cripps, 31 B.R. 541 (Bkrtcy.W.D.Okl. 1983); In re Monroe County Hous. Corp., Inc., 29 B.R. 686 (Bkrtcy.S.D.Fla. 1983); Miller v. Wells Fargo Bank Int'l Corp., 406 F. Supp. 452 (S.D.N.Y. 1975), aff'd 540 F.2d 548 (2d Cir.1976); Peninsula State Bank v. United States, 211 So.2d 3 (Fla. 1968); Florida East Coast Ry. Co. v. Consolidated Eng'g Co., 95 Fla. 99, 116 So. 19 (1928); Pleasant Valley Farms & Morey Condensery Co. v. Carl, 90 Fla. 420, 106 So. 427 (1925); General Lithographing Co. v. Sight & Sound Projectors, Inc., 128 Ga. App. 304, 196 S.E.2d 479 (1973); City Collectors, Ltd. v. Maldonado, 50 Hawaii 223, 437 P.2d 95 (1968); Vittert Constr. & Inv. Co. v. Wall Covering Contractors, Inc., 473 S.W.2d 799 (Mo. Ct. App. 1971); Elliot v. Regan, 274 Wis. 298, 79 N.W.2d 657 (1956). Compare Walker Bank & Trust Co. v. Smith, 88 Nev. 502, 501 P.2d 639 (1972).
[4] 6 Am.Jur.2d Assignments § 97 (1963); 6 Am.Jur.2d Attachment and Garnishment, supra note 2, at § 483; 4 Fla.Jur.2d Assignments § 14 (1978); Restatement (Second) of Contracts § 341 comment a (1981).
[5] As such it was a legal, not an equitable assignment. 6 Am.Jur.2d Assignments, supra note 4, at § 7. The fact that it was partially proven by parol, performance and additional documentation does not alter this conclusion. See 6 Am.Jur.2d Assignments, supra note 4 at § 82; 4 Fla.Jur.2d Assignments, supra note 4, at § 2. However, section 679.203, Florida Statutes (1983), now requires written formalities for assignments for security purposes. Restatement (Second) of Contracts, supra note 4, at §§ 324 comments a & c, 341 comment d.
[6] The bank argues the service contract was not assignable because it involved the performance on non-delegable duties and the contract prohibited assignment. However, the obligor can waive provisions against non-assignment and consent to such a delegation of duties, as happened here. 4 Fla.Jur.2d Assignments, supra note 4, at § 7; Restatement (Second) of Contracts supra note 4, at § 323 comment c.
[7] 1 G. Gilmore, Security Interests in Personal Property, § 10.5 (1965).
[8] 13 Fla.Jur.2d Creditors' Rights and Remedies, supra note 3, at § 191.
[9] Ginsberg v. Goldstein, 404 So.2d 1098 (Fla. 3d DCA 1981); 6 Am.Jur.2d Attachment and Garnishment, supra note 2, at § 162.