840 So.2d 264 (2002)
MIAMI DADE COUNTY, Florida, Appellant,
v.
ASSOCIATED AVIATION UNDERWRITERS, et al., Appellees.
No. 3D01-3523.
District Court of Appeal of Florida, Third District.
December 26, 2002.
Rehearing Denied March 26, 2003.
Greenberg Traurig, Elliot H. Scherker, Peter M. Gillon and Mitchell J. Rotbert (Washington, D.C.), and Reginald L. Bouthillier, Jr. (Tallahassee), for appellant.
Steel Hector & Davis, Alvin B. Davis, John T. Butler and Gabriel E. Nieto, Miami; Lord Bissell & Brook, Gary Westerberg, Don W. Fowler, and Christopher R. Barth (Chicago, Illinois); Siboni Hamer & Buchanan and Michael C. Siboni (Ocala); London Fischer and Julius A. Rousseau, III (New York, New York); and Phelps Dunbar and Jay Russell Sever (New Orleans, Louisiana), for appellees.
Before JORGENSON, COPE and GODERICH, JJ.
PER CURIAM.
In the underlying declaratory action, Miami Dade County appeals from final orders denying insurance coverage. After carefully reviewing the record, we find that the policies at issue were unambiguous and that Miami Dade County was not an "additional insured" under some of the policies and that the pollution exclusion precluded coverage under the other policies where the County was listed as an insured. Further, we find that the remaining issues lack merit.
Accordingly, the orders under review are affirmed.
COPE, J. (specially concurring).
I agree with the result, but disagree on some of the reasoning.
For the years 1990-92, Miami Dade County was listed as an additional insured on the insurance policies issued by the appellees to Pan American World Airways ("Pan Am"). The liability policies covered, among other things, Pan Am's operations *265 at the Miami International Airport. The policy years at issue on this appeal are 1970-71 and 1987-92.
For the pre-1990 policy years, the County was not listed as an additional insured. However, the effect of the County's bankruptcy settlement with Pan Am was to assign to the County Pan Am's claims under the insurance policies. Thus, the County has stepped into Pan Am's shoes with respect to the already-accrued claims.
On the merits, the pollution exclusions for the policy years now before us exclude the County's claims. The policies at issue here were, at a minimum, of a unique character such that they did not require approval by the Florida Department of Insurance. See § 627.410(1), Fla. Stat. Summary judgment was correctly entered in favor of the appellees.
JORGENSON, J. (dissenting).
Because the pollution exclusions do not apply and the County was an assignee under the bankruptcy settlement agreement, I respectfully dissent.
Appellees are barred from relying on the pollution exclusion because they failed to submit the form for the various exclusions to the Florida Department of Insurance as required under Section 627.410, Florida Statutes (2001). Section 627.410(1) provides:
No basic insurance policy or annuity contract form, or application form where written application is required and is to be made a part of the policy or contract, or group certificates issued under a master contract delivered in this state, or printed rider or endorsement form or form of renewal certificate, shall be delivered or issued for delivery in this state, unless the form has been filed with the department at its offices in Tallahassee by or in behalf of the insurer which proposes to use such form and has been approved by the department. This provision does not apply to surety bonds or to policies, riders, endorsements, or forms of unique character which are designed for and used with relation to insurance upon a particular subject ...
Appellees make several arguments as to why § 627.410 does not apply, of which only two merit a brief discussion: that the policies were not delivered in Florida and that the policies were of so unique a character as to avoid the filing requirements.
Appellees first claim that § 627.410 does not apply because the policies were issued to Pan American World Airways (Pan Am) at its principal place of business in New York and not delivered or issued for delivery in Florida. This position is wholly contrary to the decision in East Coast Ins. Co. v. Cooper, 415 So.2d 1323 (Fla. 3d DCA 1982), where this Court held that "[t]he fact that the policy was actually delivered in [another state] is not significant to our determination that it was `issued for delivery' to a Florida resident." Id. at 1325. See also Aperm of Florida, Inc., v. Trans-Coastal Maintenance Co., 505 So.2d 459, 462 (Fla. 4th DCA 1987) (interpreting the holding in Cooper to say that "if it is found that the policy was written to cover risks that would occur in Florida, then it will be assumed the policy was issued for delivery in Florida").
Furthermore, the policies were not of such a unique character as to avoid the filing requirement of § 627.410. See Deni Assocs. of Fla. Inc., v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 (Fla.1998) (pollution exclusions are in widespread use throughout the country); American Mut. Fire Ins. Co. v. Illingworth, 213 So.2d 747, 750 (Fla. 2d DCA 1968) (the fact that a standard exclusionary form "is written on *266 a certain person does not give it a unique character"). Therefore, I would find that the pollution exclusions are inapplicable.
As to the bankruptcy settlement, I agree with Judge Cope that the effect of the settlement was to assign to the County Pan Am's claims under the insurance policy. The settlement approved by the bankruptcy court provides:
In consideration of the foregoing ... Dade County and each of its agencies and subdivisions, shall and each hereby does release Pan Am from any and all claims of any nature whatsoever relating to or arising out of the occupation and use by Pan Am of the buildings and premises at MIA which are the subject of this agreement, excepting ... any claim for any amounts which are (A) recovered by Pan Am or (B) recoverablefrom any insurance company, except an insurance company affiliated with Pan Am, that provides or may provide insurance coverage for environmental damages to the properties at MIA caused by Pan Am.
(emphasis added).
Randle Carpenter, an attorney for the County in the settlement negotiations, testified in his deposition that during negotiations with Pan Am, the County made it clear that it wanted to be able to pursue Pan Am's insurance companies for any claims which Pan Am might otherwise have been able to pursue in its own right. Carpenter further testified that Pan Am agreed to this condition and drafted the aforementioned provision with the intent of incorporating this condition into the settlement agreement.
Appellees point to the absence of the word "assignment" from this provision. However, "courts of equity can recognize certain kinds of instruments as valid equitable assignments, where it is necessary to effectuate the plain intent of the parties or where to hold otherwise would be unjust.... No particular words ... [are] necessary to effect an equitable assignment...." Giles v. Sun Bank, N.A., 450 So.2d 258, 260 (Fla. 5th DCA 1984). "Any words or transactions showing an intention on one side to assign and on the other to receive, if supported by a valuable consideration, will operate as an effective equitable assignment." Asphalt Paving, Inc. v. Ulery, 149 So.2d 370, 375 (Fla. 1st DCA 1963). "The true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming as assignee." McClure v. Century Estates, 96 Fla. 568, 120 So. 4, 10 (1928). In my view it is clear that in exchange for the release, Pan Am assigned to the County its claims under the policies. I would reverse.