M. H. SULLIVAN, APPELLANT, VS. LOUIS BOLEY, APPELLEE.

1. B. and S. traded buggies, and it was agreed that S. should take B.'s new buggy at two hundred and fifty dollars, one hundred dollars of which to be paid by S. to B. in S.'s old buggy, and the balance or difference between the buggies to be paid in money. S. took possession of and held the new buggy, but never delivered or offered to deliver the old buggy to B., nor did S. pay or offer to pay B. for the new buggy: *Held*, that B., the plaintiff, could recover the value of the new buggy on the count of the declaration for goods sold and delivered by the plaintiff to defendant, at his request.

2. B., the plaintiff, sold lumber to S., the defendant, at plaintiff's mill, which was shipped to the defendant on the L. & N. R. R. At the trial, waybills of said company were admitted in evi-dence, which showed the *weight* of lumber shipped by plaintiff to defendant, on different dates, and the evidence showed that the waybills were made out and sent by the company in the due course of their business, and that the defendant paid the freight on the lumber so sent by said waybills. This was not error.

3. The court charged the jury that if they found from the evidence

that plaintiff offered to sell defendant a new buggy for two hundred and fifty dollars, or to exchange buggies with defendant, the defendant to pay one hundred and fifty dollars between the buggies, and defendant, after the proposition, possessed himself of plaintiff's new buggy without paying him one hundred and fifty dollars, and without delivering his old buggy to plaintiff, or offering to deliver it at the time he possessed himself of the plaintiff's new buggy, or within a reasonable time thereafter, then he would be liable for the value of the said buggy, as fixed by the plaintiff when he made the offer of sale or exchange: *Held*, correct.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*J. C. Avery* for Appellant.

*John Eagan* and *E. C. Maxwell* for Appellee.

MR. JUSTICE MITCHELL delivered the opinion of the court:

. The appellee, Boley, sued Sullivan, appellant, for goods sold and delivered by the appellee to the appellant at his request.

The goods alleged to have been sold, one buggy and 73,000 feet of lumber deals, amounting in the aggregate to $907.00.

Defendant, in his plea, admitted that he was indebted to the plaintiff $598.98, but pleaded that he was never indebted as to the residue of the plaintiff's claim.

The issues were submitted to a jury at the spring term of 1887, and the jury assessed the plaintiff's damages at $926.

Defendant moved for new trial, which motion was denied, and he appealed. The errors assigned are:

1st. In admitting in evidence the way bills of the L. & N. R. R. Co.

2d. In admitting the testimony of W. A. Roberts as to the weight and delivery of deals, as stated by him.

3d. In admitting in evidence of value of deals at Pensacola.

4th. In charging the jury as excepted to by motion for new trial.

5th. In overruling motion for new trial.

The errors may all be considered under the 5th assignment.

In the first place, the evidence in the record tends to show that some time prior to the institution of the suit, there was a trade between plaintiff and defendant, in which the plaintiff sold or traded the defendant a buggy, and that the defendant agreed to pay $250 for the same, in money, or as a part payment, to let the plaintiff have an old buggy belonging to him, defendant, at $100, the balance or difference between the buggies ($150), to be paid in cash. The defendant at once took possession of the buggy sold or traded to him by plaintiff, but never delivered or tendered the buggy he agreed to let plaintiff have, nor did he pay the $250, or any part thereof.

In the second place, that plaintiff had at his mill, the "Pine Orchard," about 72,000 feet of deals. The plaintiff testified as to the quantity, quality and value of the deals at the mill, and that Sullivan, the defendant, desiring to purchase the lumber, stated to plaintiff that he would give the highest market price therefor, and that upon such understanding the plaintiff let the defendant have the deals and agreed to ship them to defendant at Pensacola; that plaintiff did ship the deals to defendant as he had agreed to do, to the amount of about 72,000 feet. The plaintiff further testified that the deals were worth $9.00 per thou-

sand at the mill, and that he was offered that amount per thousand for them at the mill by other parties. J. A. Spoon, a witness for the plaintiff, testified that he had leased the mill from the plaintiff, and that he sawed the deals for one Hooten and that he had also sawed a lot of boards for Hooten; that Hooten would not take the boards because not satisfactory, but offered to take the deals at $9.00 per thousand, but he would not let him have them at that price; that he turned the lumber over to the plaintiff, that it was merchantable, not prime lumber. H. H. Killon, for the plaintiff, testified that he knew the lumber, that it was merchantable and good for the class; that the lumber was worth $9.00 to $9.50 at the mill, but knew of no sales. This witness also testified that 72,000 feet of the lumber went to Sullivan.

W. A. Roberts, a witness for the plaintiff, testified as follows: "I am in the employ of the L. & N. R. R. Co. Have been for several years past." Witness then produced certain way bills of the L. & N. R. R. Co., stating "that they were way bills of the L. & N. R. R. Co., and that they showed that in June, 1885, 163,000 pounds of deals were shipped by L. Boley, from the Orchard, and delivered at Pensacola to M. H. Sullivan, and that in July, 1885, 138,000 pounds of deals were shipped from Pine Orchard, by L. Boley, and delivered at Pensacola to M. H. Sullivan. That he has no knowledge of the deals or the weight thereof, or the shipment or the delivery thereof, except such as he derived from said way bills, which were not made out by him, or under his direction, but the freight shown to be due for said way bills were paid to another employee of the road, not in witness' presence, and turned over to witness by him, and that the amount due on said way bills was paid with defendant's bank check. The way bills were made in due course of business by the L. & N. R. R. Co. to

show contents of cars and amount of freight.    They have remained in my possession as proper custodian since that time." I. A. Hooten, for plaintiff, testified that he saw the deals in controversy at the mill, that the 100,000 lot was sawed for him, also a lot of boards under same contract. That the boards were not satisfactory ; that he offered to take the deals at $9.00 per thousand, which he considered them worth according to the market at that time ; that he examined the entire lot as piled at the mill ; that he had years of experience in the lumber business ; that some of the deals were merchantable and some prime ; that he was dealing in lumber and considered deals worth $9.00 at the mill ; that he saw some of them and they were from prime to merchantable.    That at Pensacola they were worth $10 per thousand.

John Eagan, for the plaintiff, testified that about October, 1886, the plaintiff gave him, as attorney, his claims against Sullivan to have them settled ; that Sullivan refused to settle the lumber business, but admitted that the buggy transaction was all right ; that he agreed to pay Boley $250 cash or give him his old buggy and $150 difference ; that he asked defendant to pay him the $150 and to give witness an order for the old buggy ; that defendant refused to do so unless witness accepted payment of other matters (not in controversy in the suit) between him and Boley on his own terms.

This is the substance of plaintiff's testimony.

W. A. S. Wheeler, for defendant, testified that he was acquainted with the deals and lumber in controversy in the case ; that he saw it on its arrival at Pensacola, when it was put off on Mr. Sullivan's wharf ; that Sullivan paid for unloading it at the cars and putting it on his wharf ; that he heard the conversation about the lumber between Sullivan and Boley ; that Sullivan had no use for the lum-

ber, but as Boley wanted to get rid of it Sullivan said he would take it and do the best he could with it, and allow Boley what was reasonable for it ; that it was a sorry lot of stuff of all sorts and sizes, and that it took a long time to dispose of it ; that some of it was still on hand when the suit was brought. As fast as it was sold the quantity and description so sold would be reported at the office at once by the employe making the inspection, and entries upon Sullivan's books were at once made in accordance with such reports ; that the amount of the deals and planks received by Sullivan from Boley according to the inspection of sales was 65,331 feet; that in view of the interior quality of the lumber and the great trouble and expense Sullivan was put to in the handling of it witness considered $7 per thousand a fair and reasonable price to pay Boley.

That he had had a great deal of experience in the purchase and sale of lumber and that hence he was able to state its value.

That he heard the transaction between plaintiff and defendant touching the buggies. It was agreed that Sullivan should buy Boley's buggy, paying him for it $150 in money and his old buggy to boot. That Sullivan received Boley's buggy. That witness took it out of the place where it was stored himself, and that it was understood that Boley should call at Sullivan's stable and get the old buggy. That witness, in Sullivan's behalf, frequently told Boley that the buggy was ready for him whenever he called for it, and it was. That Boley made no objection and did not claim that there should be any other delivery to him.

Witness further stated that he was at the time of testifying and had been ever since the transactions testified to by him, in Sullivan's employ and authorized to act for him.

The defendant in his own behalf stated, that he saw the deals and lumber delivered to him by Boley; that it was piled on his, defendant's wharf, and that he saw it frequently; that it was a poor lot of stuff, and that he had great difficulty in disposing of it; that some of it was not sold when suit was brought; that he did not have any use for it; that plaintiff wanted to get rid of it for some other business, and that defendant told him that he would take it and do the best he could with it and allow him what was right; that in view of the quality of the stuff and the trouble and expense he had been put to, defendant considered $7 per thousand a fair price for the lumber; that defendant had been in business a long time and knew the value of lumber. Defendant further stated, that as to the buggies, it was agreed that he should take plaintiff's buggy at $250, or pay him $150 in money and defendant's old buggy for the other $100; that plaintiff knew defendant's stable, and that he was to call there for it; that it was, at the time of the trial, and always had been ready for plaintiff whenever he called for it.

That when witness, Eagan, spoke to defendant in plaintiff's behalf there were other matters between plaintiff and himself, and that he had said that he wanted to close up the whole at once. and that he refused to settle with him for the buggy.

This closes the testimony for the defendant. In many respects it conflicts with the testimony of the plaintiff, but this is usual in such cases. The conflict consists in the testimony as to the quantity, quality and value of the lumber, and as to the delivery, or rather non-delivery of the old buggy by defendant to plaintiff. But the jury, as it was their duty to do, passed upon the testimony, reconciled the conflict and decided in favor of the plaintiff; and, in our judgment, the conclusion as to the amount due by the

defendant to the plaintiff was correct, and the verdict was not excessive, as contended by the defendant, but on the contrary the weight of the testimony sustains it.

The verdict was not contrary to the charge of the court, as alleged, but was in conformity therewith. This disposes of the first four grounds of the motion for a new trial.

The 5th ground for a new trial is: The court erred in permitting the plaintiff to state in evidence that he considered the deals worth to him at the mill nine dollars per thousand. We find in the testimony no such statement made by the plaintiff, but do find that he stated positively that the deals were worth $9 per thousand at the mill.

The 6th ground is: That the court erred in permitting evidence to go to the jury of the value of the deals at Pensacola.

If there is any error in this, the case of the defendant could not have been prejudiced by such testimony, for the reason that the testimony, independent of anything that was testified to as to the value of the lumber at Pensacola, must have convinced the jury that the lumber was worth $9 at the mill, the point at which it was sold.

The 7th ground of motion is that the court erred in admitting in evidence way bills of the Louisville & Nashville Railroad Company. The way bills of the company only showed that on certain dates the company shipped so many *pounds* of lumber from plaintiff's mill to the defendant at Pensacola, and that the way bills were made out and sent in due course of business of the company. The defendant could not have been injured by admitting the way bills in evidence. They did not show the number of feet in the shipments, only the number of pounds, and there is nothing in the testimony to show what was the weight of a foot of deals, then how could the defendant have been injured by the introduction of the way bills? Were the jury

misled thereby? We do not see how they could have been in view of the fact that other testimony in the case showed the number of feet actually shipped defendant. This view of the case is upon the admission that the way bills admitted in evidence were improperly admitted; but is this so? We think not, when coupled with the fact that it is shown that the defendant paid the freight on the lumber by the way bills sent therewith. See 1st Greenleaf on Evidence, sec 120, p. 152.

8th. The court erred in permitting the witness, W. A. Roberts, to testify that the way bills of the Louisville & Nashville Railroad Company showed the weight of the lumber shipped by plaintiff to the defendant.

This point has been ruled upon. There is nothing in it.

The remaining grounds for new trial relate to the charge of the court. There is nothing in any one of these grounds that shows error in the court's charges. The charges of the court correctly state the law applicable to the case.

Judgment affirmed.