## MECHOULAM. v. TURNBERRY TOWERS CORP., et al.
Case No. 80-21091 CA (05)
Eleventh Judicial Circuit, Dade County
July 10, 1981

Frank P. Scruggs, II, for plaintiff.

Robert Hertzberg, for defendants.

JON GORDON, Circuit Judge.

## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

Felix Mechoulam filed suit in order to secure the conveyance of a condominium. After eight months of litigation, motions for summary

judgment were filed on his behalf and on behalf of each of the three defendants. The parties focused on the issue of whether there came into existence a binding contract pursuant to which Felix Mechoulam became entitled to the conveyance of a certain condominium. The parties were in agreement regarding the material facts, which were as follows:

## FACTS

On December 15, 1979, a contract entitled Reservation Deposit Agreement was entered into by and between Defendant, TURNBERRY TOWERS CORP., as developer-seller and "FELIX MECHOULAM and/or his nominee(s)" as purchaser. Said Reservation Deposit Agreement was for the purchase, at the price of $237,625.00, of Unit No. 15-D in Turnberry Towers, a condominium to be constructed in Dade County, Florida.

Simultaneous with the execution of said Reservation Deposit Agreement and pursuant to its terms, Plaintiff delivered to Defendant TURNBERRY TOWERS CORP. a check in the amount of $15,000.00. TURNBERRY TOWERS CORP. took possession of the check and caused the proceeds thereof to be deposited into one of its escrow accounts at a bank. Plaintiff's $15,000.00 deposit remained in Defendant's escrow account for eight months.

The Reservation Deposit Agreement, a form contract promulgated by TURNBERRY TOWERS CORP., required purchasers to execute another document entitled "Purchase and Sale Agreement" and return same to Turnberry Towers within 15 days after receipt by the purchaser. On March 26, 1980, TURNBERRY TOWERS CORP., mailed to Plaintiff a Purchase and Sale Agreement which embodied the detailed terms upon which Plaintiff was to purchase Unit 15-D. Plaintiff executed that Purchase and Sale Agreement and returned it to TURNBERRY TOWERS CORP. in a timely manner.

Along with the executed Purchase and Sale Agreement, Plaintiff delivered to Defendant, TURNBERRY TOWERS CORP., at said Defendant's request, an additional deposit in the amount of $8,762.50. TURNBERRY TOWERS CORP. took possession of that check on or about April 1, 1980 and maintained possession through July 31, 1980, a period of some four months.*

---

*During questioning regarding the Plaintiff's Motion for Summary Judgment, counsel for the Defendants admitted that Defendants maintained possession of Plaintiff's $8,762.50 check "for two or three months" in the course of questioning whether the period was, indeed, four months. Although the Court determined that Defendant, Turnberry Towers Corp., maintained posession of Plaintiff's $8,762.50 deposit check for some four months, the difference between three and four months is immaterial given other undisputed facts and the applicable law.

Joseph Suzyn ("Suzyn") director of condominium sales and an officer of both Turnberry Towers Corp. (seller) and Turnberry Corp. (Suzyn's "employer") maintained Plaintiff's $8,762.50 check in his office in the Turnberry complex. On July 31, 1980, Suzyn wrote a letter informing Plaintiff that his contract to purchase condominium Unit 15-D would be cancelled upon return of the Plaintiff's $15,000.00 deposit.

In deposition, Joseph Suzyn expressed his view that he had the right to cancel Plaintiff's deposit contract on condominium Unit 15-D because he, as the seller's representative, had not signed the Purchase and Sale Agreement. The Reservation Deposit Agreement does not require that the Purchase and Sale Agreement be executed by the seller, only that it be duly executed by the purchaser and returned to the seller in a timely manner. During his deposition, Suzyn flatly conceded that timeliness was *not* a factor in the purported "cancellation" of Plaintiff's contract.

In the same deposition, Suzyn stated that he "cancelled" the Plaintiff's contract because the Plaintiff inserted the word "assignee" after the words identifying as purchaser "Felix Mechoulam and/or nominee". Although Plaintiff inserted the word "assignee", *Plaintiff never insisted that Defendants assent to the addition of that word to the form contract prepared by Defendants.*

During pre-purchase negotiations regarding Unit 15-D, Joseph Suzyn expressly authorized Plaintiff to "transfer the contract" from himself personally to a corporation in which he would be "the major shareholder". When asked why the Purchase and Sale Agreement named as purchaser "Felix Mechoulam and/or nominee", Joseph Suzyn testified as follows:

A.   The reason for that was that I remember one discussion with Mr. Mechoulam whereby he asked me, can we later on transfer the contract from Mr. Mechoulam personally to a corporation that is owned by Mr. Mechoulam.

Therefore he could nominate a corporation whereby he is the major stockholder of the corporation and, therefore, nominee would appear, after discussing it with Mr. Patrice Mechoulam.

Q.   Was that with respect to another condominium here at Turnberry.

A.   With respect to No. 15-D itself.

Q.   With respect to 15-D itself.

A.   Correct.

On August 13, 1980, prior to returning Plaintiff's full deposit, Turnberry Towers Corp. executed and entered into another Purchase and Sale Agreement relating to condominium Unit 15-D with one Maurice Houllou. The price specified in that transaction was $363,000.00, some $126,000.00 more than price assured to Plaintiff in Reservation Deposit Agreement. Plaintiff received no prior notice of the transaction and no opportunity to delete from the Purchase and Sale Agreement any terms objectionable to Defendants. Joseph Suzyn consciously refrained from providing any such notice.

## CONCLUSIONS OF LAW

Defendants' sole colorable defense for the purported "cancellation" of Plaintiff's right to purchase condominium Unit 15-D by sales director Joseph Suzyn rests on the alleged non-existence of the Purchase and Sale Agreement as a contract. Defendants' position is that the Purchase and Sale Agreement never was formed as a contract. Their Answer to the Amended Complaint focuses on the tender of the Purchase and Sale Agreement as their offer and characterizes Plaintiff's response thereto as a counter-offer. Defendants assert that the mere appearance of the one word addition "/assignee" after the words which they typed in, "Felix Mechoulam and/or nominee(s)" destroyed Plaintiff's acceptance of the offer.

The initial question confronted by the Court is whether the addition of the word "assignee" after the phrase identifying as purchaser "Felix Mechoulam and/or nominee" constitutes, as Defendants assert, a rejection of the Plaintiff's offer or a counter-offer with respect thereto. The Court answers the question negatively, given the facts herein and the most pertinent decision on point.

In *Kitsos v. Sanford*, 291 So.2d 632 (Fla. 3d DCA 1974) the court held that addition of the words "and/or assignee" after the name of the purchaser on a deposit receipt relating to real property did not prevent the creation of a mutually enforceable contract where the purchaser did not assign the contract or insist that the seller assent to the addition of the words "and/or assignee". The rule of decision was as follows:

> An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.

RE-STATEMENT OF CONTRACTS §62 (1933)

*Kitsos v. Stanford, supra* was an action for damages for breach of a contract to sell real property. The trial court found no contract and

entered summary judgment for the seller. The Third DCA reversed with instructions to enter summary judgment on behalf of the plaintiff/purchaser.

The contract in *Kitsos v. Stanford* contained a clause which is functionally equivalent to paragraph 27 of the Purchase and Sale Agreement, relied upon by the defendants—both clauses require the seller's prior consent to any assignment:

> *"This contract shall be binding upon* both parties, the seller and the purchaser, their heirs, executors or *assigns when approved by the owner* of the property above described."

291 So.2d at 639.

> "This agreement is personal to the Purchaser, and the Purchaser agrees that it shall not be assigned, or transferred without the written consent of the Seller. . ."

¶28, *Purchase and Sale Agreement.*

The language of the Purchase and Sale Agreement and the language of the contract at issue in Kitsos v. Stanford require the seller to consent to any assignment. A fact common to both *Kitsos v. Stanford* and the instant case is that there was no assignment and no insistence by either purchaser that the respective seller assent to the inclusion of the additional word "assignee". Absent such insistence, the additional term is surplusage or a mere suggestion.

The rule of decision in *Kitsos v. Stanford* has been the prevailing law since the Supreme Court of Florida decided *Knabb v. Reconstruction Finance Corp.*, 197 So. 707 (1940). In that case, the Court held that a contract was formed, in spite of the plaintiff's suggestion of additional terms along with his acceptance of the defendant's offer. The Supreme Court of Florida applied the RESTATEMENT OF CONTRACTS §62, the same provision which prescribed the outcome of *Kitsos v. Stanford, supra.* 197 So. at 716, *citing inter alia Turner v. McCormick*, 56 W.Va. 161, 49 S.E. 28 (1904).

A separate and wholly adequate basis of decision may be found in the fundamental rule of contract law that, while silence usually does not operate as acceptance, an offeree or counter-offeree who remains silent while maintaining possession of things offered to him accepts the offer or counter-offer as a matter of law. This principle is embodied in the Restatement of Contracts:

## §72. ACCEPTANCE BY SILENCE OR EXERCISE OF DOMINION

(2) Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept.

Virtually every treatise which discusses contract law recognizes the foregoing principle. *E.g.* 17 C.J.S. *Contracts* §41(e) (1963); 17 Am. Jur.2d, *Contracts* §47 (1964); 1 *Corbin on Contracts* §72 (1963 ed.); 1 *Williston, Contracts* §91, (Jaeger ed. 1957); See also *Mizel v. Watson*, 57 Fla. 111, 49 So. 149 (1903); *Sullivan v. Boley*, 24 Fla. 501, 5 So. 244 (1888).

It would be difficult to imagine a case more appropriate for the application of the foregoing principle than the one before this Court. In this case, the Defendant, Turnberry Towers Corp., for some four months maintained possession of the $8,762.50 deposit check tendered by Plaintiff along with the executed Purchase and Sale Agreement bearing the one word addition, "/assignee". Prior to returning the check Turnberry Towers Corp. deliberately remained silent, in spite of Plaintiff's inquiries regarding why the Turnberry Towers Corp. had not deposited the $8,762.50 check. Mr. Suzyn was asked in deposition why he did not provide any response to the tender of the deposit and executed Purchase and Sale Agreement by the Plaintiff. The following exchange occurred:

Q. So after you saw the word "assignee" on the contract, you didn't make any effort whatever?

A. He didn't make any effort to call me to tell me he was changing the contract; why should I call him to tell him it was wrong.

Q. Is that the reason why you didn't contact him?

A. That's correct.

\* \* \* \*

Q. Why didn't you pay him the courtesy of calling him and telling him?

A. Why didn't he call me and pay me the courtesy of telling me he was changing the contract.

During the time that Suzyn maintained possession of the Plaintiff's deposit and executed Purchase and Sale Agreement, his silence led Plaintiff to believe that the transaction had been consummated. Apparently, Mr. Suzyn did not find the word "assignee" sufficiently objectionable to provide any notice until Houllou appeared in August with a willingness to spend in excess of $100,000.00 more for Unit 15-D than the price assured to Plaintiff in the Reservation Deposit Agreement.

In the Court's view, Suzyn's conduct warrants the application of the foregoing rule and a holding that, even if the Plaintiff's response to Defendants' offer of the Purchase and Sale Agreement was a counter-offer (a supposition which this Court rejects) Defendant Turnberry Towers Corp. accepted it as a matter of law.

Consequently, the Court grants Plaintiff's Motion for Summary Judgment, denies that of the Defendants, and finds as follows: A contract existed between the Plaintiff and TURNBERRY TOWERS CORP. which the latter party breached and TURNBERRY TOWERS CORP. will be required upon entry of Judgment to convey Unit 15-D to Plaintiff upon completion.

## FINAL SUMMARY JUDGMENT

THIS MATTER came on to be heard before the Court on cross motions for Summary Judgment. After examining the pleadings, depositions, answers to interrogatories and admissions on file, having heard argument of counsel, having made its findings of fact and conclusions of law, and being otherwise fully advised, the Court has determined that there are indeed no issues of material fact, and that the entry of summary final judgment is appropriate. Therefore, and after due consideration, it is

ORDERED, ADJUDGED and DECREED as follows:

1. The Motion for Summary Judgment filed by defendants be and the same is hereby denied.

2. The Motion for Summary Judgment filed by plaintiff be and the same is hereby granted and specific performance of the contract attached to and incorporated in the Plaintiff's Amended Complaint be and the same is hereby granted.

3. Within 90 days after the recording of this Judgment, or within 10 days following the issuance of a Certificate of Occupancy whichever event occurs last, the Defendants, TURNBERRY TOWERS CORP. and FLAGSHIP NATIONAL BANK OF MIAMI, shall convey to Plaintiff a good, sufficient and marketable title evidenced by a statutory Warranty Deed as typically used in Dade County, Florida, to Unit 15-D

of Turnberry Towers, a condominium at 19355 Turnberry Way a/k/a 19355 N.E. 36th Court, North Miami, Dade County, Florida, forthwith, upon payment to Defendants of the total sum of $237,625.00.

4.　Upon the failure of Turnberry Towers Corp. and Flagship National Bank of Miami to convey to Plaintiff a good, sufficient and marketable title pursuant to this Judgment such additional relief shall be granted as may be necessary to effectuate this Judgment, and the Court reserves its jurisdiction to do so.

5.　The Court also reserves its jurisdiction to award the amount of and the costs and attorneys' fees upon motion and, if necessary, hearing.

6.　Defendants TURNBERRY TOWERS CORP. and FLAGSHIP NATIONAL BANK OF MIAMI shall take nothing by this action.

7.　The Court incorporates by reference in this Final Summary Judgment its Findings of Fact and Conclusions of Law entered this same day.